[S. F. No. 22503. . In Bank. July 28, 1967.]

DONALD JOSLIN et al., Plaintiffs and Appellants, v. MARIN MUNICIPAL WATER DISTRICT, Defendant and Respondent.

Bagshaw, Martinelli, Weissich & Jordan, W. O. Weissich and Hadden W. Roth for Plaintiffs and Appellants.

Riede & Elliott, Robert W. Elliott, Ronald D. Schenck, Bacigalupi, Elkus, Salinger & Rosenberg, Tadini Bacigalupi, Jr., and William G. Fleckles for Defendant and Respondent.

Frederick Bold, Jr., as Amicus Curiae on behalf of Defendant and Respondent.

SULLIVAN, J.—Plaintiffs, owners of lands riparian to Nicasio Creek in Marin County, appeal from a summary judgment for defendant entered in an action in inverse condemnation for damages resulting from defendant's construction of a dam across said creek at a point above plaintiffs' lands.

Plaintiffs' third amended complaint (complaint) alleges that since March 1955 plaintiffs have been, and now are, the owners of a parcel of five acres of land; that a stream (Nicasio Creek) runs through their property; that the normal flow of the waters of the stream carried in suspension rock, sand and gravel which were deposited on plaintiffs' lands; that plaintiffs operated on their property a rock and gravel business in the course of which they sold and used the deposits of rock and gravel; that defendant is a municipal water district organized and existing under the Municipal Water District Act of 1911; that prior to May 1962 defendant constructed a dam across Nicasio Creek; that as a result the normal flow of waters in said stream was obstructed to such an extent that "the normal and usual replenishment of rocks

and gravel'' upon plaintiffs' lands ceased; that the value of plaintiffs' lands was thereby diminished in the amount of $250,000, and that plaintiffs had been deprived of gravel and rock having an accrued value of $25,000 at the time of filing the complaint.

Defendant moved for summary judgment. The declaration of its general manager, filed in support of the motion, states that defendant duly filed its application with the State Water Rights Board (board) for a permit to appropriate and store unappropriated waters from Nicasio Creek for municipal water supply purposes (Wat. Code, §§ 1250-1266); that it published notices of its application as required by law (Wat. Code, §§ 1300-1316); that protests to the application (Wat. Code, § 1330), none of which were by plaintiffs, were filed with and duly resolved by the board; that the board issued its permit on May 31, 1961 (Wat. Code, §§ 1340-1353); that pursuant to plans approved by the board (see Wat. Code, §§ 1382, 1393) the dam was constructed and completed on August 21, 1961, and defendant began to store water pursuant to its permit; that defendant had no notice that plaintiffs claimed any right to use the waters of Nicasio Creek for the purposes stated in their complaint until plaintiffs' claim was presented to defendant on April 3, 1963; that plaintiffs' lands are approximately one mile downstream from defendant's dam with other riparian owners intervening; and that defendant did not physically enter upon or take by eminent domain any of plaintiffs' real property by constructing the dam or reservoir.

Plaintiffs' declaration filed in opposition to the motion merely states that at no time up to the completion of the Nicasio Dam on August 21, 1961, did plaintiffs have actual knowledge of any application made to the board to use, store or divert water nor did they receive any notice of defendant's intention to do so.

The court granted defendant's motion for summary judgment "upon the ground there was no substantive right of plaintiffs violated by defendant."[1]

With some variance in language the parties assert

[1]The minute order granting said motion also states: "It is therefore not necessary to determine whether the claim was timely filed, although it is the Court's incidental opinion that it was; nor is it necessary to determine whether plaintiffs' failure to participate in the administrative proceedings would bar their claim, although it is the Court's incidental opinion that it would not if vested substantive riparian rights were involved."

that the principal issue before us is whether defendant, an upstream appropriator of water, is liable in damages to plaintiffs, downstream riparian owners, by reason of having appropriated the waters of the creek under the above-mentioned circumstances.

To bring this appeal into focus, we must first briefly review the growth and development of California water law. In its first stage which began with the "gold rush," this law dealt mainly with those who diverted water from streams in the public domain for mining purposes and sought to adjudicate the competing claims of the parties using such water on the basis of a principle of prior appropriation.[2] Subsequently with the increasing importance of agriculture over mining, the courts became more involved with riparian rights. (See fn. 2, *ante,* address by Shaw, C. J., 189 Cal. 779, 789-791.) This doctrine which had its genesis in the common law of England initially was made to rest in California on the basic principle "that the riparian proprietor is entitled to the full flow of the stream. reduced only by the proper riparian uses which may be made of the water by proprietors above him." (*Miller & Lux* v. *Enterprise Canal etc. Co.* (1915) 169 Cal. 415, 443 [147 P. 567]; see *Lux* v. *Haggin* (1886) 69 Cal. 255, 390-394 [4 P. 919, 10 P. 674]; *Herminghaus* v. *Southern Cal. Edison Co.* (1926) 200 Cal. 81, 94-96 [252 P. 607].)[3] Such riparian rights extended to "the entire flow of the waters of [a] river considering the same with its seasonal accretions as the usual and ordinary flow of said stream during each and every year." (*Herminghaus* v. *Southern Cal. Edison Co., supra,* at p. 91.)

It was inevitable that the claims of appropriators and riparian owners would collide and that the legal principles upon which they were asserted would appear to be in conflict.

[2]See "The Development of the Law of Waters in the West" address by Shaw, C.J., to American Bar Association, 189 Cal. 779, 779-789.

[3]In *Lux* v. *Haggin, supra,* this court said: "*By the common law the right of the riparian proprietor to the flow of the stream is inseparably annexed to the soil, and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right, and disuse cannot destroy or suspend it. The right in each extends to the natural and usual flow of all the water, unless where the quantity has been diminished as a consequence of the reasonable application of it by other riparian owners for purposes hereafter to be mentioned.*" (69 Cal. at p. 390.) "*By our law the riparian proprietors are entitled to a reasonable use of the waters of the stream for the purpose of irrigation. What is such reasonable use is a question of fact, and depends upon the circumstances appearing in each particular case.*" (P. 394.)

Reconciling these principles,[4] this court in the leading case of *Lux* v. *Haggin, supra,* 69 Cal. 255, declared " 'that the rights of the riparian owners to the use of the waters of the abutting stream were paramount to the rights of any other persons thereto; that such rights were parcel of the land and that any diminution of the stream against the will of the riparian owner by other persons was an actionable injury. The question was settled by that case and the riparian right has never since been disputed.' " (*Herminghaus* v. *Southern Cal. Edison Co., supra,* 200 Cal. 81, 95, quoting from address of Shaw, C. J., see fn. 2, *ante.*) As a result the principle emerged that an upstream appropriator could not deprive a downstream riparian owner of his right to the use of the full flow of a stream, even though only a small percentage of the flow was utilized to benefit the lands of the downstream riparian. (*Herminghaus* v. *Southern Cal. Edison Co., supra,* 200 Cal. 81, 94-103; see also *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.* (1935) 3 Cal.2d 489, 523-524 [45 P.2d 972]; *Miller & Lux* v. *Madera Canal etc. Co.* (1909) 155 Cal. 59, 64 [99 P. 502, 22 L.R.A. N.S. 391]; *Lux* v. *Haggin, supra,* 69 Cal. 255.)

Thereafter, and in apparent response to the *Herminghaus* decision (see *Gin S. Chow* v. *City of Santa Barbara* (1933) 217 Cal. 673, 699-700 [22 P.2d 5], the California Constitution was amended in 1928. (Art. XIV, § 3.)[5] The amendment

[4]It is noteworthy that while this court in *Lux* v. *Haggin, supra,* 69 Cal. 255, 387, declared that the "*doctrine of 'appropriation,' so called, is not the doctrine of the common law,*" it subsequently observed with respect to the legal basis of rights of appropriation: "Diversions were accordingly made and immediately there began to arise disputes relating to interfering diversions from the same stream, which speedily found their way into the courts and it became necessary to ascertain the rules of law by which claims of that kind were governed. An analogy was found in the rules of the common law relatng to controversies over the possession of land between persons who had no title thereto and in which the real owner did not interfere or intervene." (*Palmer* v. *Railroad Com.* (1914) 167 Cal. 163, 170 [138 P. 997].)

[5]The amendment has not since been modified, altered or changed, and provides: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. Riparian rights in a stream or water course attach to, but to no more than

was generally construed as applying a rule of reasonable use "to all water rights enjoyed or asserted in this state, whether the same be grounded on the riparian right or the right, analogous to the riparian right, of the overlying land owner, or the percolating water right, or the appropriative right." (*Peabody* v. *City of Vallejo* (1935) 2 Cal.2d 351, 383 [40 P.2d 486].) Thus the rule of reasonableness of use as a measure of the water right which had theretofore been applied as between other contesting claimants[6] but had been denied application as between riparian owners and appropriators was finally extended to include the latter. (*Peabody* v. *City of Vallejo, supra,* at p. 367; *Gin S. Chow* v. *City of Santa Barbara, supra,* at pp. 703-705; see generally 1 Waters and Water Rights (Clark 1967) § 19.1.)

As epitomized in *Peabody,* the amendment is said to declare: "1. The right to the use of water is limited to such water as shall be reasonably required for the beneficial use to be served. 2. Such right does not extend to the waste of water. 3. Such right does not extend to unreasonable use or unreasonable method of use or unreasonable method of diversion of water. 4. Riparian rights attach to, but to no more than so much of the flow as may be required or used consistently with this section of the Constitution." (2 Cal.2d 351, 367.)

It has been long and clearly settled in California that the effect of the passage of article XIV, section 3, "has been to modify the long-standing riparian doctrine . . . and to apply, by constitutional mandate the doctrine of reasonable use between riparian owners and appropriators, and between overlying owners and appropriators." (*Tulare Irr. Dist.* v.

so much of the flow thereof as may be required or used consistently with this section, for the purposes for which such lands are, or may be made adaptable, in view of such reasonable and beneficial uses; provided, however, that nothing herein contained shall be construed as depriving any riparian owner of the reasonable use of water of the stream to which his land is riparian under reasonable methods of diversion and use, or of depriving any appropriator of water to which he is lawfully entitled. This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained."

[6]For example "as between riparian owners (*Pabst* v. *Finmand,* 190 Cal. 124 [211 P. 11]); as between owners overlying an underground water supply (*Katz* v. *Walkinshaw,* 141 Cal. 116 [70 P. 663, 74 P. 766, 99 Am.St.Rep. 35, 64 L.R.A. 236]); as between appropriators (*Natoma W. & M. Co.* v. *Hancock,* 101 Cal. 42 [31 P. 112, 35 P. 334]); as between overlying owners and exporters from an underground basin to nonoverlying lands (*Burr* v. *Maclay Rancho Water Co.,* 154 Cal. 428 [98 P. 260]); and as between riparian owners and overlying owners under the doctrine of common source of supply (*Hudson* v. *Dailey,* 156 Cal. 617 [105 P. 748]); . . ." (*Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 367.)

*Lindsay-Strathmore Irr. Dist., supra,* 3 Cal.2d 489, 524;[7] see also *Gin S. Chow* v. *City of Santa Barbara, supra,* 217 Cal. 673, 703-705; *Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 367; *City of Lodi* v. *East Bay Mun. Utility Dist.* (1936) 7 Cal.2d 316, 339 [60 P.2d 439]; *Miller & Lux* v. *San Joaquin L. & P. Corp.* (1937) 8 Cal.2d 427, 435 [65 P.2d 1289]; *Rancho Santa Margarita* v. *Vail* (1938) 11 Cal.2d 501, 556-557 [81 P.2d 533]; *Ivanhoe Irr. Dist.* v. *All Parties* (1957) 47 Cal.2d 597, 623 [306 P.2d 824].) "The right to the waste of water is not now included in the riparian right." (*Peabody* v. *City of Vallejo, supra,* at p. 368.) What is a reasonable use or method of use of water is a question of fact to be determined according to the circumstances in each particular case. (*Gin S. Chow* v. *City of Santa Barbara, supra,* at p. 706.)

In *Peabody,* several lower riparian owners sought to enjoin the City of Vallejo, as an appropriator, from storing the waters of a creek by the construction of a dam and thereafter diverting them to municipal uses. Peabody, one of the plaintiffs, asserted a right to have all the waters flow without interruption since by normally overflowing his land they not only deposited silt thereon but also washed out salt deposits on portions of the land. The court held that "this asserted right does not inhere in the riparian right at common law, and as a natural right cannot be asserted as against the police power of the state in the conservation of its waters. This asserted right involves an unreasonable use or an unreasonable method of use or an unreasonable method of diversion of water as contemplated by the Constitution." (*Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 369.)[8]

[7]In *Lindsay-Strathmore* it was said: "Under this new doctrine, it is clear that when a riparian or overlying owner brings an action against an appropriator, it is no longer sufficient to find that the plaintiffs in such action are riparian or overlying owners, and, on the basis of such finding, issue the injunction. It is now necessary for the trial court to determine whether such owners, considering all the needs of those in the particular water field, are putting the waters to any reasonable beneficial uses, giving consideration to all factors involved, including reasonable methods of use and reasonable methods of diversion. From a consideration of such uses, the trial court must then determine whether there is a surplus in the water field subject to appropriation." (*Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist., supra,* 3 Cal.2d 489, 524-525.)

[8]In *Peabody,* the trial court disregarded the effect of the policy declared by California Constitution, article XIV, section 3, holding under *Miller & Lux* v. *Madera Canal & Irr. Co.* (1909) 155 Cal. 59 [99 P. 502; 22 L.R.A. N.S. 391] and *Herminghaus, supra,* that a riparian owner was entitled to the full flow of the stream "regardless of any waste or surplus that might result from the exercise of such a right and regardless of any

Although, as we have said, what is a reasonable use of water depends on the circumstances of each case, such an inquiry cannot be resolved *in vacuo* isolated from statewide considerations of transcendent importance. Paramount among these we see the ever increasing need for the conservation of water in this state, an inescapable reality of life quite apart from its express recognition in the 1928 amendment.[9] On the other hand, unlike the unanimous policy pronouncements relative to the use and conservation of natural waters, we are aware of none relative to the supply and availability of sand, gravel and rock in commercial quantities. Plaintiffs do not urge that the general welfare or public interest requires that particular or exceptional measures be employed to insure that such natural resources be made generally available and should therefore be carefully conserved.

Is it "reasonable," then, that the riches of our streams, which we are charged with conserving in the great public interest, are to be dissipated in the amassing of mere sand and gravel which for aught that appears subserves *no* public

---

rule of reasonable use." (*Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 363.)

[9]In *Gin S. Chow* v. *City of Santa Barbara, supra,* 217 Cal. 673, it is stated: "The present and future well-being and prosperity of the state depend upon the conservation of its life-giving waters. In his concurring opinion in *Miller* v. *Bay Cities Water Co., supra,* [157 Cal. 256 (107 P. 115, 27 L.R.A. N.S. 772)], Mr. Justice Shaw made the following appropriate comment on general water conditions in this state: 'In many parts of the state, especially in the large interior valleys, practically all the flood waters are waste waters. They contribute little or nothing to the saturation of any subterranean gravel beds which are resorted to for a supply of water for useful purposes. They rush in great volume to the sea, carrying destruction in their path and overflowing the low lands to the great damage of the owners, serving no useful purpose whatever. If they were stored in reservoirs they might be made to serve a triple purpose. The extreme floods and consequent overflow and destruction would be prevented; the stored water could be used to irrigate large areas of the valley land, now left unproductive for lack of water; if distributed upon the plains, for irrigation, a large portion of these waters would in due course of time find their way by seepage and percolation to the channels of the streams . . . ; all of which would add tremendously to the growth, prosperity and wealth of the state and to its ability to support the large population which its climate and productions attract. The question of the right to store such flood waters and the terms upon which it can be obtained or exercised is of the greatest importance to the future welfare of the state.' . . . These observations are self-evident, not only under present conditions, but for all time to come. It requires no extraordinary foresight to envision the great and increasing population of the state and its further agricultural and industrial enterprises dependent upon stored water—water that is now wasted into the sea and lost to any beneficial use. *The conservation of other natural resources is of importance, but the conservation of the waters of the state is of transcendent importance.* Its waters are the very life blood of its existence." (Italics added.) (217 Cal. at pp. 701-702.)

policy? We cannot deem such a use to be in accord with the constitutional mandate that our limited water resources be put only to those beneficial uses "to the fullest extent of which they are capable," that "waste or unreasonable use" be prevented, and that conservation be exercised "in the interest of the people and for the public welfare." (Cal. Const., art. XIV, § 3.) We are satisfied that in the instant case the use of such waters as an agent to expose or to carry and deposit sand, gravel and rock, is as a matter of law unreasonable within the meaning of the constitutional amendment. (See *Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 369.)

Plaintiffs argue that *Los Angeles County Flood Control Dist.* v. *Abbot* (1938) 24 Cal.App.2d 728 [76 P.2d 188], conclusively establishes that a riparian owner has a right to receive rock, sand and gravel deposited by a stream on his land, that such use of the stream is reasonable, and that any interference with such right by one not a riparian is actionable. We do not agree.

In *Abbot* the plaintiff district condemned an easement over a portion of defendant's property for the construction of a concrete flood control channel to confine and carry off the waters of the Alhambra wash. Such waters had naturally overflowed defendants' lands depositing thereon a considerable amount of sand and gravel which defendant collected in bunkers and sold. The construction of the concrete channel prevented this overflow and brought to an end the replenishment of rock, sand and gravel. Affirming an award of severance damages in respect to defendants' lands, not taken for improvement of the channel, the court declared: "We are not here dealing with flood waters which, when of no benefit to a riparian owner or to his land and not used by him, may be taken at will by any person who can lawfully gain access to the stream, but are concerned with a natural flow of water, which, under the established doctrine of the California decisions, is annexed to the soil, not as an easement or appurtenance, but as a parcel. (*Herminghaus* v. *Southern Cal. Edison Co.*, 200 Cal. 81 [252 P. 607].) The beneficial use of the flow of the water in the Alhambra wash by respondents Yonker had become a property right vested in them by thirty years of usage." (24 Cal.App.2d at p. 733.) It concluded that by diverting the waters, plaintiff took from defendants "a valuable property right"; that this could not be done except "under and by virtue of the sovereign right of eminent

domain, *and upon making just compensation*''; and that the use to which the water was put by defendants ''in no way contravened the provisions of section 3, article XIV, of the Constitution of this state.'' (*Los Angeles County Flood Control Dist.* v. *Abbot, supra,* 24 Cal.App.2d 728, 736-737, *passim.*)

Despite the aforementioned passing reference to article XIV, section 3, the opinion in *Abbot* does not appear to discuss, nor to treat as issues raised therein, questions as to the reasonable use or the reasonable methods of the use of water according to the constitutional test prescribed by article XIV, section 3. It appears especially significant that the opinion not only relied on *Herminghaus* which preceded and indeed precipitated the passage of the 1928 constitutional amendment but also ignored this court's interpretation of the amendment in *Peabody,* decided only three years before. As we read *Abbot,* the basic reason for this seems to be that the court there was not presented with a controversy between users of water as such, that is between a riparian owner on the one hand and an appropriator on the other, such as prevailed in *Peabody* and now confronts us in the present case. *Abbot* therefore involved no issue of reasonableness which required resolution in adjudicating competing claims to the *use* of the water. Rather, it was concerned with the determination of severance damages consequent upon the condemnation of an easement by a flood control district which did not seek to appropriate or use the waters in question. We need not, and do not, here determine whether the court in *Abbot* properly concluded that the riparian rights in that case extended to the receiving of deposits of rock, sand and gravel and that the interference therewith under the circumstances of that case was actionable. We point out only that because of the problem confronting it, the *Abbot* court measured the riparian's property right for severance damage purposes according to the ''beneficial use of the flow of the water'' (*Los Angeles County Flood Control Dist.* v. *Abbot, supra,* 24 Cal.App.2d 728, 733) without being faced with the issue as to whether such right was or should be ''limited to such water as shall be reasonably required for the beneficial use to be served, . . .'' (Cal. Const., art. XIV, § 3; *Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 366-367.)

Apart from their reliance upon *Abbot,* plaintiffs have not shown how their claimed use of the stream in the instant case, when measured by the constitutional mandate, is a reasonable one. In essence their position is that such use is a

beneficial one encompassed within their riparian rights and that all beneficial uses are reasonable uses. Such a position ignores rather than observes the constitutional mandate. Article XIV, section 3, does not equate "beneficial use" with "reasonable use." Indeed the amendment in plain terms emphasizes that water must be conserved in California "with a view of the reasonable *and* beneficial use thereof in the interest of the people," that the right to use water "shall be *limited* to such water as shall be *reasonably* required for the beneficial use to be served," and that riparian rights "attach to, but to *no more than* so much of the flow" as may be required "in view of such reasonable *and* beneficial uses." (Italics added.) (Cal. Const., art. XIV, § 3; see fn. 5, *ante.*) Thus the mere fact that a use may be beneficial to a riparian's lands is not sufficient if the use is not also reasonable within the meaning of section 3 of article XIV and, as indicated, plaintiffs' use must be deemed unreasonable. Anything to the contrary in *Los Angeles County Flood Control Dist.* v. *Abbot, supra,* 24 Cal.App.2d 728, is disapproved.

Assuming *arguendo* the unreasonableness of their use of the stream, plaintiffs contend that in any event they are entitled to be compensated for the damage to their property interests. Article XIV, section 3, they say, was only a procedural as opposed to a substantive change in the law and had the effect of merely denying injunctive relief to protect certain riparian uses. Article I, section 14,[10] on the other hand confers on them a cause of action for money damages for the injury to their real property resulting from the district's public improvement.

While plaintiffs correctly argue that a property right cannot be taken or damaged without just compensation, they ignore the necessity of first establishing the legal existence of a compensable property interest. Such an interest consists in their right to the *reasonable* use of the flow of the water. Their riparian rights attach to no more of the flow of the stream than that which is required for such use. (Cal. Const., art. XIV, § 3; see fn. 5, *ante.*) As we said in *Ivanhoe Irr. Dist.* v. *All Parties, supra,* 47 Cal.2d 597, 623: "*Within the scope of reasonable beneficial use,* vested rights of the riparian owner continued to attach to his land as a part and parcel of the land itself, and as such was necessarily protected from

[10]Cal. Const., art. I, § 14, provides in pertinent part: "Private property shall not be taken or damaged for public use without just compensation . . ."

unlawful encroachment by both state and federal Constitutions. The result is that this vested right *as now defined* may not be destroyed or infringed upon without due process of law or without just compensation under either Constitution." (Italics added.) There is now no provision of law which authorizes an unreasonable use or endows such use with the quality of a legally protectible interest merely because it may be fortuitously beneficial to the lands involved.

Moreover plaintiffs' claim to money damages under the circumstances of the instant case is foreclosed by the decision of this court in *Gin S. Chow* v. *City of Santa Barbara, supra,* 217 Cal. 673. In that case it is made clear that the constitutional amendment (Cal. Const., art. XIV, § 3) was adopted for the purpose of redefining water rights rather than merely of providing remedies for the invasion of such rights. Plaintiffs in that case sought a determination that the City of Santa Barbara was not entitled to divert storm, flood and freshet waters from the Santa Ynez River for the purpose of storage. In meeting the argument that the amendment was not intended to affect property rights deemed as vested prior thereto, the court stated: "There is a well recognized and established distinction between a 'taking' or 'damaging' for public use and the regulation of the use and enjoyment of a property right for the public benefit. The former falls within the realm of eminent domain, and the latter within the sphere of the police power. That the constitutional amendment now under consideration is a legitimate exercise of the police power of the state cannot be questioned. It is the highest and most solemn expression of the people of the state in behalf of the general welfare. . . . [T]he amendment purports only to regulate the use and enjoyment of a property right for the public benefit, for which reason the vested right theory cannot stand in the way of the operation of the amendment as a police measure. A vested right cannot be asserted against it because of conditions once obtaining. [Citation.] It has been long established that all property is held subject to the reasonable exercise of the police power and that constitutional provisions declaring that property shall not be taken without due process of law have no application in such cases. [Citation.]" (217 Cal. at pp. 701-703.)

In discussing the limitation of reasonable use of natural waters as a reasonable exercise of the police power, the court continued: "There is nothing novel about the limitation of the riparian right to a reasonable, beneficial use of water.

Other western states which first adopted the common-law doctrine of riparian rights have effectually changed it to meet modern conditions. . . . A general survey . . . discloses that whenever the riparian right has been deemed a vested right such right has become defined to be, or limited to, the right of the riparian owner to make a reasonable . . . use of water. Although the riparian right in this state has not heretofore been so defined and limited, a limitation of the right as thus defined has now become the law of this state whenever, under situations of fact calling for its proper exercise in behalf of the people of the state, the doctrine of police power may be applied. The present case presents such a situation of fact, and the eminent domain provisions of the Constitution have no application.'' (217 Cal. at pp. 704-705.)

From the foregoing we arrive at the conclusion that since there was and is no property right in an unreasonable use, there has been no taking or damaging of property by the deprivation of such use and, accordingly, the deprivation is not compensable. (See *Peabody* v. *City of Vallejo, supra*, 2 Cal.2d 351, 369; *Ivanhoe Irr. Dist.* v. *All Parties, supra*, 47 Cal.2d 597, 623; *Crum* v. *Mt. Shasta Power Corp.* (1934) 220 Cal. 295, 307 [30 P.2d 30].)

Plaintiffs direct our attention to *United States* v. *Gerlach Live Stock Co.* (1950) 339 U.S. 725 [94 L.Ed. 1231, 70 S.Ct. 955, 20 A.L.R.2d 633], as compelling a different conclusion. In that case riparian owners sought compensation for the loss of irrigating waters which overflowed the banks of the San Joaquin River onto their lands when the river flooded each year. There was no question but that the use of water for irrigating riparian lands was a reasonable use, within the meaning of the constitutional amendment. The court concluded that the use in question was a property interest which survived the amendment and was compensable.

*Gerlach*, of course, is distinguishable from the instant case in that plaintiffs here are not making a use of the natural flow of waters which can be deemed reasonable, and it was on the determination of a reasonable use that *Gerlach* turned: ''Any hazard to claimants' rights lurks in the following clause: 'and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water.' Since riparian rights attach to, and only to, so much of the flow of the San Joaquin as may be put to beneficial use consistently with this clause, claimants can enforce no use of wasteful or unreasonable

character." (339 U.S. at p. 752.) Accordingly, *Gerlach* affords no aid to plaintiffs. To the same effect is *Hillside Water Co.* v. *City of Los Angeles* (1938) 10 Cal.2d 677 [76 P.2d 681], where overlying landowners were compensated for the deprivation of their underground water supply by a pumping operation.

Our foregoing conclusion disposes of plaintiffs' contention that they have a right to recover damages under section 1245 of the Water Code. As we have explained, since there was and is no property right in the instant unreasonable use, there has been no taking or damaging of property. Since by constitutional fiat no property right exists, none is created by statutory provisions intended to provide compensation for the deprivation of protectible property interests. Thus plaintiffs' reliance upon section 1245 which imposes liability upon municipal entities for damage caused to any "property, business, trade, profession or occupation" by the municipality's entry into a watershed "for the purpose of acquiring or increasing a water supply" is misplaced for the reason that there is no damaging of any property interest to which plaintiffs have a lawful right.

Finally, having in mind these legal principles and the conclusions which we have reached, we turn to inquire whether the judgment properly rests upon them under the rules governing the summary judgment procedure (Code Civ. Proc., § 437c)[11] invoked by defendant.[12] We have summarized these well-settled rules as follows: "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient

---

[11]Section 437c provides in part: "In superior courts and municipal courts if it is claimed the action has no merit, or that there is no defense to the action, on motion of either party, after notice of the time and place thereof in writing served on the other party at least 10 days before such motion, supported by affidavit of any person or persons having knowledge of the facts, the answer may be stricken out or the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. . . ."

[12]All parties before us ignore these rules. Plaintiffs in particular seem to misconceive the issue actually presented for our review and, instead of asserting the insufficiency of defendant's affidavit to support the judgment or the sufficiency of their own affidavit to raise a triable issue, advance various contentions as to the sufficiency of their complaint to state a cause of action.

to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.'" (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)[13]

Addressing ourselves first to the sole affidavit filed in support of defendant's motion, the matters alleged therein tend to establish but one material fact—that defendant is a proper appropriator of the waters of Nicasio Creek. Thus the affidavit, primarily because it neglects to delineate the nature and relationship of the plaintiffs' property interest claimed to have been damaged by defendant's appropriation of the water, at first blush appears to fail in establishing that the "action has no merit," or that defendant is entitled "to a judgment in the action." (Code Civ. Proc., § 437c.)

Where a plaintiff moves for summary judgment, he cannot depend upon allegations in his complaint to cure deficient affidavits, but must set out in his affidavits facts in support of all elements entitling him to a recovery. (*Kimber* v. *Jones* (1954) 122 Cal.App.2d 914, 918 [265 P.2d 922]; see also *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 261, 262-263 [223 P.2d 244].) Likewise, a moving defendant cannot rely on his answer in support of his deficient affidavit, as in such instance he would be in the same posture as a moving plaintiff seeking to rely on his own pleading. (See Civil Procedure Before Trial (Cont. Ed. Bar), Summary Judgments, p. 868.) Nor can a party rely on his own pleadings in lieu or in support of affidavits in opposition to a motion. (*Coyne* v. *Krempels, supra,* 36 Cal.2d 257, 262; *Snider* v. *Snider* (1962) 200

[13]Citing *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 260-261 [223 P.2d 244]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264]; *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 747-749 [19 Cal.Rptr. 709].

Cal.App.2d 741, 755 [19 Cal.Rptr. 709]; *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 563 [277 P.2d 464]; *Hardware Mut. Fire Ins. Co.* v. *Valentine* (1953) 119 Cal.App.2d 125, 129 [259 P.2d 70].)

However the courts have heretofore recognized that a distinction exists where the party seeks to rely on his *adversary's* rather than his *own* pleadings to establish facts not contained in his affidavit. (See Civil Procedure Before Trial (Cont. Ed. Bar), Summary Judgments, p. 868.) A moving plaintiff may, for instance, rely upon a defendant's admission of a material allegation contained in the complaint. (*Schulze* v. *Schulze* (1953) 121 Cal.App.2d 75, 81-82 [262 P.2d 646].) In *Gardenswartz* v. *Equitable etc. Soc.* (1937) 23 Cal.App.2d Supp. 745 [68 P.2d 322], the moving plaintiff's affidavit was deemed insufficient because it failed to set out with particularity the contents of documents sued upon. It appeared, however, that the contents were ascertainable from allegations or admissions in the answer, and for that reason were properly before the court on the motion for summary judgment. "Consequently, the plaintiff was under no necessity of saying anything about these matters in his affidavits supporting his motion for summary judgment." (23 Cal.App.2d Supp. at p. 752.)

The court in *Gardenswartz* reasoned that those pleading matters which were before the court and would be foreclosed on a trial of the issues could be considered on the motion for summary judgment. This follows from the principle that the aim of the procedure embodied in section 437c is to discover, through the media of affidavits, whether there are triable issues of fact. (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417; *Burke* v. *Hibernia Bank* (1960) 186 Cal.App.2d 739, 744 [9 Cal.Rptr. 890].) As a plaintiff would not be entitled on a trial of the cause to present evidence *contrary* to the allegations of his complaint (see *Brown* v. *Aguilar* (1927) 202 Cal. 143, 149 [259 P. 735]; *Malone* v. *Roy* (1897) 118 Cal. 512, 514 [50 P. 6, 542]), those allegations are foreclosed to him and, where not put in issue by defendant's affidavits, present no triable issues at least for purposes of the motion for summary judgment. As in *Gardenswartz,* the court may properly consider such matters in determining the motion.

The foregoing makes it clear that a moving defendant, unlike a moving plaintiff, need merely establish a defense to a claim theretofore asserted "in the action." His supporting

affidavits are responsive in nature and are necessarily addressed to the complaint. It is within the contemplation of section 437c that the factual matters which he sets out in such affidavits are to take their significance upon a consideration of the complaint. In no way departing from the rule that such affidavits are to be strictly construed, it would nevertheless be placing form before substance if we were to require that a moving defendant's affidavits which assert facts establishing a defense when considered with the particular claim relied upon by plaintiff, must be deemed insufficient because they further fail to repeat therein those matters already asserted in the complaint. In such a case, the repetition of the substance of the complaint would be a useless act, the doing of which the law does not require. (Civ. Code, § 3532.)

When defendant's affidavit is considered in context with plaintiffs' complaint it is immediately apparent, for reasons heretofore enunciated, that the unreasonable use of the waters of Nicasio Creek relied upon by plaintiffs as purported riparians, does not constitute a compensable property right when deprived by defendant's lawful appropriation of such waters. Defendant's affidavit, accordingly, is sufficient to sustain the judgment. Should plaintiffs' counteraffidavit nevertheless raise triable issues of fact, we could not affirm the judgment. (*Burke* v. *Hibernia Bank, supra,* 186 Cal.App.2d 739, 744.) However, as previously pointed out, that affidavit contains no material factual matter and thus fails to raise a triable issue.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Appellants' petition for a rehearing was denied September 21, 1967.