[Civ. No. 39290. First Dist., Div. Four. Nov. 17, 1977.]

ERNEST S. BROWN et al., Plaintiffs and Appellants, v.
CITY OF FREMONT et al., Defendants and Respondents.

**COUNSEL**

Cox, Cummins & Lamphere and Paul O. Lamphere for Plaintiffs and Appellants.

Fulop, Rolston, Burns & McKittrick, Marvin G. Burns and Kenneth B. Bley as Amici Curiae on behalf of Plaintiffs and Appellants.

Allen E. Sprague, City Attorney, Theodore R. Bresler, Assistant City Attorney, Fred Caploe, Charles J. Williams and Williams & Caploe for Defendants and Respondents.

James P. Jackson, City Attorney (Sacramento), and Leliand J. Savage, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**CALDECOTT, P. J.**—Plaintiffs-appellants, Ernest S. Brown and Charlotte J. Brown (hereinafter referred to as Brown) are owners of land located within the territorial limits of defendant-respondent City of Fremont (city).[1] The complaint alleged three causes of action in inverse condemnation. Respondents filed a motion for summary judgment on all three counts, which motion was granted and judgment entered. The appeal is from the judgment.

Appellant Brown alleges in the first cause of action that respondent city, from 1966 through August 1974, pursued a course of action whereby appellants were denied all economic uses of their property. The second cause of action alleged the respondents adopted a de facto moratorium which constituted an unreasonable "spot zoning" of Brown's property. The third cause of action sought damages for a "down zoning" of Brown's property which reduced the fair market value of the property from $3.5 million to $675,000, for agricultural uses.

Brown owns approximately 250 acres of real property in Fremont which is located in a larger area 'known as the Northern Plain. The property has been zoned agriculture and flood plain from 1957 to the present time. The zoning of the Brown property permits the following uses as a matter of right: agriculture, including nurseries, ranch and farm dwellings, public parks, extraction of chemicals from sea water by natural evaporation, dwellings for permanent ranch staff, home occupations, and professional offices in a home, private garages, parking areas,

---

[1]Other named defendants-respondents are the city council, the members of the city council, and the Planning Commission of the City of Fremont.

and stables, roadside stands for sale of own products, and other accessory uses.

From 1957 to 1969, the Fremont general plan designated the Brown property for agricultural use. In 1969, Fremont revised the general plan to indicate the possibility of a variety of uses for the Northern Plain area, including the Brown property, which included residential and industrial uses. The 1969 general plan for the Northern Plain area of Fremont was premised on construction of a freeway by the state which would have served the area.

The state abandoned the proposed freeway in 1973. After this decision by the state not to construct the freeway, Fremont commenced studies of the 1969 general plan for the Northern Plain. The studies were for the purpose of ascertaining the effect of the abandonment of the freeway on the plan for the Northern Plain. In April 1973, the Fremont planning staff concluded that the intense development contemplated by the 1969 general plan was not advisable without the freeway to serve the Northern Plain area.

In September and November 1973, pursuant to the mandates of Government Code sections 65302, subdivisions (d) and (e), and 65560-65567, Fremont adopted the conservation element and the open space element, respectively, of the general plan. These two elements expressed the policy of preserving and encouraging agricultural uses and of weighing the relative benefits of agricultural and housing uses for the Northern Plain area. At the same time Fremont adopted these elements of the general plan, the Fremont planning staff began an intensive planning study of the Northern Plain.

During the summer of 1974, the Fremont planning staff presented an interim report of this intensive study to the Fremont Planning Commission and City Council. After the public hearings, the Fremont planning staff recommended the general plan be amended to provide for agricultural uses of the Brown property through 1985.

On August 20, 1974, the Fremont City Council held a public hearing on the planning commission recommendation to amend the general plan. At this public hearing the city council adopted a motion indicating the intent of the city council to amend the general plan for the Northern Plain as recommended and directing the planning staff to prepare the amendment.

The intent and direction of the motion were never implemented, because Fremont was enjoined from doing so by the superior court in the case of *Singer Housing Co. v. City of Fremont.* It was this motion that triggered the present litigation and is what Brown refers to as a de facto moratorium.

■ Brown contends that during the period 1966 to 1973, four applications were made to the city to develop the property and all were denied; that on August 20, 1974, the city council adopted a motion of intent to amend the general plan restricting his property to agricultural uses; that as a result of the city's actions, the property has been restricted to agricultural uses, the income from the property is less than the taxes, and the property was so stigmatized by the repeated and continuous action of the city that it was impossible to sell the property. He claims that the city has effectively taken the property for public use. The basis of Brown's claim is that because of the actions of the city he has been deprived of any reasonable economic use of his property and the trial court erred in granting summary judgment. Brown cites *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613 [129 Cal.Rptr. 575], as being "particularly appropriate to this action." In *Eldridge,* the court reversed a judgment after a demurrer without leave to amend had been sustained. The court pointed out at page 628, that "the gist of plaintiffs' complaints is that the city's open-space ordinance denied them any reasonable or beneficial use of their land." The complaint thus stated a cause of action and the demurrer should have been overruled.

The present action is governed not by the rules of demurrer but by rules of summary judgment. Under the summary judgment statute, the court shall grant summary judgment, ". . . if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c.)

■ In determining whether the papers show that there is no triable issue as to any material fact, the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence. Summary judgment shall not be granted based on reasonably deducible inferences if contradicted by other inferences or evidence which raise a triable issue as to a material fact. (Code Civ. Proc., § 437c; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 173, pp. 2825-2827.)

The propriety of granting or denying the motion depends upon the sufficiency of the declarations, not whether, on the face of the pleadings, a fact issue is to be determined. (*Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 562-563 [277 P.2d 464].)

A defendant, however, can, in addition to his declaration, rely upon an allegation of the complaint and there is no need that a defendant's declaration repeat matters already asserted in the complaint. (See *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 148 [60 Cal.Rptr. 377, 429 P.2d 889]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 182, pp. 2833-2834.)

■ Six declarations were filed on behalf of defendant city. The declarations are sufficient to show, with one important exception, that there is no triable issue of a material fact. Brown's counterdeclaration states the city's actions have prevented "any economical use" of the property. This statement would raise an issue as to a material fact. However, the complaint alleges that the property has a value of $675,000 for agricultural use. The property is zoned for agricultural use. A defendant can rely upon allegations of the complaint without repeating them in his declaration. Brown, in his complaint and declaration, has made conflicting statements of a material fact. As stated in *Manti* v. *Gunari* (1970) 5 Cal.App.3d 442, 449 [85 Cal.Rptr. 366]: "While inconsistent *theories* of recovery are permitted [citation], a pleader cannot blow hot and cold as to the facts positively stated." Brown has admitted in his complaint a valuable economic use of the property and cannot by his own declaration deny it. The court in *Joslin* v. *Marin Mun. Water Dist.*, *supra*, at page 148, said: "As a plaintiff would not be entitled on a trial of the cause to present evidence *contrary* to the allegations of his complaint [citations], those allegations are foreclosed to him and, where not put in issue by defendant's affidavits, present no triable issues at least for purposes of the motion for summary judgment." Thus, in the present case, no issue of fact is presented as to the first and second causes of action.

■ The third cause of action is based on a reduction of fair market value because of "down zoning." This cause of action is answered in *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 513 [125 Cal.Rptr. 365, 542 P.2d 237]. The court stated that inverse condemnation does not lie in zoning actions in which the complaint alleges mere reduction of market value. We note that the amended complaint was filed prior to the

*HFH* decision and that Brown is not stressing this cause of action on appeal.

Brown has cited several cases to support his position. They are, however, of no help to him. The cases all basically hold that a land owner is entitled to compensation when the agency's actions deprive the owner of any reasonable or beneficial use of the land. Such is not the case here. Brown admits the land is worth $675,000 for agricultural use.

Finally, Brown states in his declaration that the market for the property is destroyed as no bona fide buyer is interested in property that cannot be developed to any economic use. This claim is answered by Brown's own admission of the value of the property for agricultural use. Furthermore, there is no requirement that property must be zoned so that a subdivider can develop the property for a higher economic use.

We have not discussed the issue of taxes. If Brown contends the assessment is too high (the county assessor's determination of fair market value and Brown's determination differ by only 11 percent), the state Constitution and statutes provide the procedure for review. Inverse condemnation is not Brown's remedy.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 13, 1978.