[Civ. No. 41185. First Dist., Div. Two. Apr. 26, 1978.]

AMERIGO ORSETTI, Plaintiff and Appellant, v.
CITY OF FREMONT et al., Defendants and Respondents.

COUNSEL

Brunn, Leighton, Miller & Rinehart and Gary R. Rinehart for Plaintiff and Appellant.

Allen E. Sprague, City Attorney, Theodore R. Bresler, Assistant City Attorney, Williams & Caploe and Fred Caploe for Defendants and Respondents.

OPINION

EATON, J.*—Plaintiff and appellant Amerigo Orsetti was an owner of land located within the territorial limits of defendant and respondent City of Fremont.[1] Plaintiff filed a complaint for damages in inverse condemnation. Defendants filed a motion for summary judgment which motion was granted and judgment entered. Plaintiff appeals from the judgment.

On July 28, 1976, plaintiff caused an amended and supplemental complaint for damages in inverse condemnation to be filed in the Superior Court of Alameda County. The complaint contains the following allegations: Plaintiff was the owner of certain real property. Plaintiff consented to his property being incorporated into the City of Fremont, relying upon the representations of defendants that his property could be developed as a residential subdivision. The 1969 general plan of defendants provided that the use of the property should be residential. On August 16, 1971, plaintiff and Singer Housing Company (hereinafter Singer) entered into an option agreement whereby Singer agreed to purchase the property for approximately $445,000 if it could secure the necessary zoning and permits for a residential subdivision. Singer made the necessary applications to defendants but defendants engaged in dilatory procedures in acting on Singer's applications which prevented the sale of the property within a reasonable time after August 15, 1971. On August 20, 1974, Fremont announced its decision to maintain the property as open space and to prohibit any residential development for 10 years. The property is economically useless for agricultural purposes.

_____

*Assigned by the Chairperson of the Judicial Council.

[1]Other named defendants and respondents are the city council, the members of the city council, the planning commission and the community development director.

The complaint contains the following additional allegations: Subsequent to having granted the option to Singer, plaintiff became in need of funds in order to pay taxes on the estate of his deceased wife. Plaintiff was able to obtain the funds by a loan in the amount of $187,000 from the Bank of Fremont secured by a deed of trust on the property. The bank required that Singer guarantee the plaintiff's note. Singer was required to pay the loan when it became due and received by assignment all rights under the deed of trust. Thereafter, Singer caused the trustee's sale of the property and the property was sold to Singer for the amount of indebtedness, interest and costs on June 2, 1976. "As a direct and proximate result of the actions of defendants, plaintiff was deprived of the total value of the subject property, which was in excess of $445,000, and received only the $187,000 as alleged hereinabove."

Defendants noticed a motion for summary judgment. In support of the motion for summary judgment the declaration of Robert M. Carlson, senior planner and zoning administrator of defendants, was filed. The city also submitted to the court various city documents of which judicial notice could be taken. Since this is an appeal from a judgment after defendants' motion for summary judgment was granted, it is necessary to look at defendants' declaration and accompanying documents, the only one filed in support or opposition to the motion for summary judgment, in some detail. The property in question is located in the City of Fremont in an area known as the Northern Plain. The property has been zoned agricultural flood plain (AF) from 1957 to the present time. The zoning of the property as AF permits the following uses as a matter of right: agriculture, including agricultural nurseries, ranch and farm dwellings, public parks, extraction of chemicals from sea water by natural evaporation, dwellings for permanent ranch staff, home occupations, professional offices in a home, private garages, parking areas, stables, roadside stands for sale of own products and other accessory uses.[2]

From 1957 to 1969, the Fremont general plan designated the property under consideration for agricultural use. In 1969, Fremont revised the general plan to indicate the possibility of a variety of uses for the

[2]In addition the following uses are permitted upon the application and approval of a conditional use permit: Dairying, animal and poultry husbandry, guest ranches, riding academies and public stables, shooting clubs, feed lots, kennels, agricultural processing plants and fertilizer plants and yards, migrant labor camps, outdoor theatres, golf driving ranges, swimming pools, private airports and landing strips, corporation yards and salvage yards (if enclosed), public dumps, commercial nurseries, and any other use which will not impair the present or potential use of adjacent properties.

Northern Plain area which included residential uses. The 1969 general plan for the Northern Plain area of Fremont was premised on construction of a freeway by the state which would have served the area.

The state abandoned the proposed freeway in 1973. After this decision by the state not to construct the freeway, Fremont commenced studies of the 1969 general plan for the Northern Plain. In November of 1973 the city adopted a general plan policy providing that the rezoning of land from agricultural to urban uses " 'shall be properly timed so as to be consistent with the orderly development of the City. . . .' "

Following the aforementioned general plan policy statement of November of 1973 regarding the proper time of Northern Plain zoning from agricultural to residential, the city council on August 20, 1974, received the interim report for the Northern Plain and adopted the following motion indicating the intent of the council: "IT WAS MOVED . . . TO UPHOLD THE RECOMMENDATION OF THE PLANNING COMMISSION INDICATING COUNCIL'S INTENTION TO AMEND THE GENERAL PLAN TO AGRICULTURAL USE FOR THE NORTHERN PLAIN AREA THROUGH 1985, EXCEPT FOR . . . [certain described areas not here relevant]; AND TO INSTRUCT THE STAFF TO PREPARE A GENERAL PLAN AMENDMENT IN ACCORDANCE WITH THIS INTENT. . . ."

The intent and direction of the motion was never implemented because Fremont was enjoined from doing so by the superior court in the case of Singer Housing Co. v. City of Fremont. (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145 [142 Cal.Rptr. 46].) It was this motion that triggered the present litigation.

Plaintiff filed points and authorities in opposition to the motion for summary judgment but did not file any declarations or affidavits. After the matter was argued, defendants' motion for summary judgment was granted. Thereafter judgment was entered in favor of defendants. Plaintiff filed a timely notice of appeal from the judgment.

As judgment arose from the granting of a motion for summary judgment, a brief summary of the law of summary judgment as it pertains to this case would be helpful.

Section 437c of the Code of Civil Procedure provides that a motion for summary judgment "shall be supported or opposed by affidavits,

declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken.

"Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.

"Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

█ The affidavits of the moving party are strictly construed. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264]; *Zellner* v. *Lasky* (1970) 13 Cal.App.3d 787, 789 [91 Cal.Rptr. 810].) If said affidavits are insufficient to dispose of all triable issues of fact, the motion must be denied, even if no counteraffidavit is filed. If, however, the moving party shows that he is entitled to summary judgment the opponent of the motion cannot rely on his pleadings, but must make an independent showing that he has sufficient proof of the matters alleged to raise a question of fact. (*Cullincini* v. *Deming* (1975) 53 Cal.App.3d 908, 913-914 [126 Cal.Rptr. 427]; *Warfield* v. *McGraw-Hill, Inc.* (1973) 32 Cal.App.3d 1041, 1045 [108 Cal.Rptr. 652].) This rule applies even where the pleadings are verified. (*Cullincini* v. *Deming, supra*, at p. 914; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].) Here Orsetti's complaint is verified. █ A defendant, however, can rely upon an allegation set forth in the complaint, without repeating it in his declaration. (*Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 148 [60 Cal.Rptr. 377, 429 P.2d 889]; *Brown* v. *City of Fremont, supra*, 75 Cal.App.3d 141, 146; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 182, pp. 2833-2834.)

We are cognizant of *Brown* v. *City of Fremont, supra*, 75 Cal.App.3d 141, in which this court (Division Four) affirmed the judgment entered for the City of Fremont following the superior court's granting defendant's motion for summary judgment. In *Brown*, the plaintiff alleged

actions by defendant, with one exception, identical with the acts alleged herein. The sole difference being that in *Brown,* the city formally denied plaintiff's application for a residential development, whereas in this matter the city never took any action on Singer's application for a residential development. In both actions, plaintiffs, who had property in the Northern Plain area of Fremont, claimed damages based on an inverse condemnation cause of action. In *Brown,* plaintiff alleged his property to have an agricultural value of $675,000, substantially less than its value as residential property ($3.5 million). Herein, Orsetti admits to having received $187,000 for his property, claiming the value of the property for residential purposes to be $445,000.

For the reasons set forth in *Brown* and in addition for the reasons hereinafter set forth, we hold that the trial court properly granted the city's motion for summary judgment. It necessarily follows that the judgment of dismissal must be affirmed.

It is stipulated that Orsetti bases his claim for inverse condemnation principally on the adoption by Fremont's city council of a motion evidencing its intent to amend its general plan.

Under the authority of *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111], it is now clear that a plaintiff does not state a cause of action for inverse condemnation because of an adoption of a general plan. In *Selby,* the plaintiff alleged that the general plan adopted by the county showed certain proposed streets extending through plaintiff's property and that no payment had been offered for any of plaintiff's land upon which the proposed streets would be located. (*Selby Realty Co.* v. *City of San Buenaventura, supra,* at p. 117.) The court in *Selby* held that the complaint did not state a cause of action for inverse condemnation stating: "The deleterious consequences of haphazard community growth in this state and the need to prevent further random development are evident to even the most casual observer. The Legislature has attempted to alleviate the problem by authorizing the adoption of long-range plans for orderly progress. Thus, it has provided not only for the adoption of general plans but also regional plans (§ 65060 et seq.), specific plans (§ 65450 et seq.), district plans (§ 66105 et seq.), and a comprehensive plan for the conservation of San Francisco Bay (§ 66650 et seq.). In addition, the voters recently passed an initiative measure providing the mechanism for adoption of plans to preserve and protect the state's coastline. (Pub. Resources Code, § 27000 et seq.)

"If a governmental entity and its responsible officials were held subject to a claim for inverse condemnation merely because a parcel of land was designated for potential public use on one of these several authorized plans, the process of community planning would either grind to a halt, or deteriorate to publication of vacuous generalizations regarding the future use of land. We indulge in no hyperbole to suggest that if every landowner whose property might be affected at some vague and distant future time by any of these legislatively permissible plans was entitled to bring an action in declaratory relief to obtain a judicial declaration as to the validity and potential effect of the plan upon his land, the courts of this state would be inundated with futile litigation. It is clear, under all the circumstances, that plaintiff has not stated a cause of action against the county defendants for either declaratory relief or inverse condemnation." (*Id.,* at pp. 120-121.) Thus the court in *Selby* concluded that the lower court properly sustained the demurrer to plaintiff's complaint as it did not state a cause for inverse condemnation.

*Selby* was followed by this court (Division Two) in *Dale v. City of Mountain View* (1976) 55 Cal.App.3d 101 [127 Cal.Rptr. 520]. Plaintiff in *Dale* was the owner of property which at the time the property was incorporated into the city in 1962 was zoned agricultural and had been used as a golf course under a valid use permit from the city. (*Id.,* at p. 105.) Plaintiff's application for a zoning change was disapproved. (*Id.,* at p. 106.) Thereafter, "the city adopted Resolution No. 9734, Amendment No. 9, to the general plan of the city, which resolution proscribed all use of Dales' property except as open space for the purpose of providing recreational and visual relief to the citizens of the city and the surrounding communities." (*Id.,* at p. 106.) This court in *Dale* cited *Selby* as dispositive on the issue of whether the complaint stated a cause of action for inverse condemnation. (*Id.,* at p. 108.)

Also in accord is *Navajo Terminals, Inc. v. San Francisco Bay Conservation etc. Com.* (1975) 46 Cal.App.3d 1 [120 Cal.Rptr. 108], wherein this court (Division Three) also came to the conclusion that the adoption of a resolution does not constitute a taking or give rise to a cause of action for inverse condemnation under the authority of *Selby*. In *Navajo,* the trial court sustained the demurrer of the San Francisco Bay Conservation and Development Commission (BCDC) to Navajo's complaint. The complaint alleged "that Navajo is the owner of certain real property with approximately 500-foot frontage on the United States Tidal Canal; that on November 18, 1971, BCDC, by its resolution pursuant to Government Code section 66611, established a portion of Navajo's

property as a waterfront park; that such action by BCDC constituted inverse condemnation for which Navajo is entitled to damages." (*Id.,* at p. 3.) The appellate court in affirming the judgment of dismissal stated that the resolution, like the general plan in *Selby,* was tentative and could be altered, modified or even abandoned. The court quoted from *Selby* as follows: " 'Neither *Klopping* nor any other decision of which we are aware holds that the enactment of a general plan for the future development of an area, indicating potential public uses of privately owned land, amounts to inverse condemnation of that land.' " (*Id.,* at pp. 4-5.)

Clearly, if the actual enactment or amendment of a general plan does not constitute a taking, a declaration of intent by the city council to amend its general plan does not constitute a taking. Accordingly, under the authority of *Selby,* there was no triable issue of fact whether the actions of the City of Fremont in regard to its general plan for the Northern Plain amounted to inverse condemnation of plaintiff's land.

Contrary to Orsetti's contention, there are no facts before us to bring this case within the rationale of *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613 [129 Cal.Rptr. 575]. *Eldridge* held that a public entity may not use its zoning power as a device to take land for public purposes without the payment of just compensation. In reversing the trial court's sustaining of defendant's demurrer, the court found that the complaint's allegations, if proved, would show that the city used its zoning power as an alternative method to acquisition of the property to achieve an open space objective.

Orsetti relies on *Eldridge* by claiming that city's "Declaration of Intent" constituted a de facto rezoning of his property. Assuming, without conceding that Orsetti's complaint states a cause of action which under *Eldridge* could withstand a demurrer, we have before us a judgment arising from the granting of defendants' motion for summary judgment.

Plaintiff did not file any declarations which would show that he has sufficient proof to show that the actions of defendant were a property-taking device rather than a regulation of the use of land. (*Pinheiro* v. *County of Marin* (1976) 60 Cal.App.3d 323, 328 [131 Cal.Rptr. 633].) However, the declaration of defendants filed in support of the motion for summary judgment sets forth the various uses of land zoned agricultural.[3] Therefore, defendants by their declarations have shown that the intended

---

[3]The various uses have been noted earlier in this opinion.

amendment to the general plan is a regulation of the use of land and plaintiff did not file any declarations which present a question of fact as to whether the actions of defendants constituted a property-taking device.

■ Orsetti attempts to distinguish *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508 [125 Cal.Rptr. 365, 542 P.2d 237], cert. den., 425 U.S. 904 [47 L.Ed.2d 754, 96 S.Ct. 1495]. In *HFH,* the California Supreme Court declared that inverse condemnation does not lie for zoning actions in which the only alleged effect is a mere reduction in market value. (*Id.,* at pp. 514, 518.) Consequently, it was held that the trial court correctly sustained a demurrer to a complaint which alleged that as the result of zoning plaintiff's land was reduced in value from $400,000 to $75,000. Quoting from *Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 602-603 [55 Cal.Rptr. 710], the court stated: " '. . . Public entities are not bound to reimburse individuals for losses due to changes in zoning, for within the limits of the police power "some uncompensated hardships must be borne by individuals as the price of living in a modern enlightened and progressive community." ' " (*HFH, Ltd.* v. *Superior Court, supra,* at p. 516.)

Plaintiff alleged in his complaint: "As a direct and proximate result of the actions of defendants, plaintiff was deprived of the total value of the subject property, which was in excess of $445,000, and received only the $187,000 as alleged hereinabove."[4] This allegation, aside from its being contradictory on its face, places this case squarely within the holding of *HFH* that an action in inverse condemnation does not lie for zoning which results in a mere reduction in market value. However, plaintiff contends that the receipt of $187,000 is irrelevant to this case because he received the $187,000 by a loan received prior to the city's action. He claims the city's "Declaration of Intent" rendered the property valueless. This claim is simply not borne out by the facts of which we can take notice. As previously indicated, the city's declaration in support of its motion for summary judgment indicated numerous possible uses of the property. In addition, due to Orsetti's failure to file any counter declaration, we have no facts before us to support a finding that his property was even diminished in value, not to speak of its being rendered of no value. We must therefore find that Orsetti's property had value after the city declared its intention to amend its general plan.

---

[4]As noted above defendants can rely upon plaintiff's pleading to support their motion for summary judgment. (*Joslin* v. *Marin Mun. Water Dist., supra,* 67 Cal.2d 132, 149.)

Accordingly, the judgment must be affirmed. A cause of action does not lie for inverse condemnation for the mere declaration of an intent to amend a general plan. Nor does a cause of action lie for inverse condemnation for zoning actions in which the effect is mere reduction in market value (i.e., the regulation of the use of land).

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied May 18, 1978.