[Civ. No. 927.   Fifth Dist.   Dec. 4, 1968.]

LEE LENTZ, Plaintiff and Appellant, v. JOHN WRIGHT
LENTZ, a Minor, etc., Defendant and Respondent.

Borton, Petrini, Conron & Brown and Warren C. Wetteroth
for Plaintiff and Appellant.

King, Eyherabide, Owen & Anspach and Stephen Eyherabide for Defendant and Respondent.

STONE, J.—Lee Lentz, the widow of Dr. J. R. Lentz, appeals from a summary judgment in favor of the minor son of Dr. Lentz and his former wife, Patricia Lentz, in an action brought to impress an equitable lien upon real property.

About March 7, 1960, J. R. Lentz and Patricia obtained a loan from the Equitable Life Assurance Society, evidenced by a promissory note which was secured by a deed of trust upon a parcel of community real property. Equitable also issued a policy on the life of Dr. Lentz for $25,000, with Patricia Lentz as beneficiary, which Dr. Lentz and Patricia assigned to Equitable by a written instrument, as collateral security for the loan. Dr. Lentz reserved the right to change the beneficiary.

Some four years later, April 9, 1964, Dr. Lentz and Patricia in the course of obtaining a divorce, entered into a property settlement agreement whereby the policy was set apart to Dr. Lentz as his separate property subject to the assignment to Equitable, and the real property subject to Equitable's deed of trust was set apart as the separate property of the wife. It was agreed that the wife would use diligence in attempting to sell the house for a reasonable price, the husband agreeing to pay $300 a month alimony until the home was sold and after the sale of the property to increase alimony by $125 per month. Pending sale of the property, the husband agreed to make all payments falling due under the terms of the deed of trust, including taxes and insurance, so long as the wife maintained the home as her residence.

Patricia Lentz died before selling the property. Her estate, including the real property, was distributed to her son, respondent herein, subject to the deed of trust securing the loan from Equitable. The decree of distribution is dated October 2, 1965.

In the meantime, Dr. Lentz married appellant. On December 13, 1965, Dr. Lentz, while in the hospital seriously ill, sent for his attorney to consult with him concerning a will. The attorney's affidavit relates:

"Dr. Lentz advised me that it was his wish for Lee Lentz to have one-half of his estate and stated specifically that he had an insurance policy with Equitable Life Assurance Company in the amount of $25,000.00, which would be equal to one-half of his estate.

"That Dr. Lentz requested that I obtain for him a request

for change of beneficiary so that he could make Lee Lentz the beneficiary of said Equitable Life Assurance Company policy. He then directed that I prepare a will for him making no provision under the will for Lee Lentz inasmuch as she was otherwise designated as beneficiary of said insurance policy with benefits comparable to his estate.''

The attorney prepared a will, which Dr. Lentz executed, providing in part:

''I am intentionally making no provision under this document for my wife, LEE LENTZ, since she is otherwise designated as beneficiary of an insurance policy with benefits comparable to my entire estate.''

On December 17, 1965, Dr. Lentz designated Lee Lentz, appellant herein, as beneficiary under the policy; the next day he died. Out of the proceeds of the policy Equitable paid to itself the balance due under the note and deed of trust, amounting to $21,347.12, and paid to appellant the remainder of the $25,000 policy.

Appellant instituted this action to have an equitable lien impressed upon the real property, upon the theory it was Dr. Lentz's intention that the property should be the primary security for the lien against it and that the face amount of the life insurance policy should go to her. In short, she asked the court to impress an equitable lien against the property for $21,347.12, the amount Equitable paid out of the proceeds of the policy to itself in satisfaction of its lien against respondent's real property.

It should be noted at the outset that appellant is not attempting to enforce a right of subrogation in the classic sense; she does not ask to be substituted in the place and stead of the insurance company, the assignee of the policy. Rather, she asks that the court impose an equitable lien upon the property equal to the amount of the insurance proceeds used to clear the property of the lien of the deed of trust. Were appellant claiming by subrogation to succeed to the rights of Equitable, then all of the conditions and all of the restrictions pertaining to the right of subrogation contained in the assignment to Equitable woud be enforceable as to appellant. But the insurance company is not a party to this action; appellant does not seek to step into its shoes. It follows, therefore, that the terms of the original assignment of the policy are not necessarily controlling in determining appellant's rights in this action.

▮ To establish an equitable lien, appellant must demonstrate that her deceased husband not only intended to make the real property primary security for the debt to the insurance company and the insurance policy merely collateral security, but that he had the right to do so. (31 Cal.Jur.2d, Liens, § 10, Equitable Liens, p. 240.) ▮ It is difficult to define the proof necessary to establish an equitable lien of this character. We learn from 31 Cal.Jur.2d, Liens, section 10, Equitable Liens, pages 241-242: "The form of the agreement creating the lien is not material, for equity looks at intent and purpose rather than form. If the intent appears to be to pledge certain property as security for an obligation, the lien follows. There must, however, be an intent to fasten the obligation to a given thing, or the circumstances must be such that a just or equitable adjustment of the rights of the parties contemplates the dedication of the property specifically to the obligation."

The problem is to find, within this broadly expressed equitable principle, a guide or norm against which to measure the facts peculiar to this case. We find no case that is close aboard, but a significant analogy is provided in 91 A.L.R.2d 490, under the subject "Right of Life Insurance Beneficiary Against Estate of Insured Who Used Policy as Collateral." There it is said that in determining the right of the beneficiary "the controlling factor is the intention of the parties as indicated by the terms of the will, the insurance policy, the assignment, and *other pertinent*, extrinsic evidence." (Italics added.)

Using this test, the intent of the deceased husband at the time he assigned the policy to appellant must be gleaned from several sources. In addition to the circumstances surrounding the original transaction which gave rise to the loan by Equitable, the deed of trust against the real property, and the issuance and assignment of the insurance policy, there is also the separation agreement entered into at the time of the divorce which materially altered the interests of Dr. Lentz and Patricia in both the real property and the insurance policy. Other pertinent evidence that must be weighed consists of what transpired during the conversation between Dr. Lentz and his attorney concerning the nature and extent of his estate, instructions as to his will and changing the beneficiary of the insurance policy assigned to Equitable. There is the will itself, in which the deceased said:

"I am intentionally making no provision under this document for my wife, LEE LENTZ, since she is otherwise desig-

nated as beneficiary of an insurance policy with benefits comparable to my entire estate.''

In this appeal from a summary judgment, how we think the facts summarized above should be resolved is immaterial; the only question before us is whether the party resisting the motion (appellant) has presented facts which give rise to a triable issue. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Joslin* v. *Marin Municipal Water Dist.*, 67 Cal.2d 132, 146 [60 Cal. Rptr. 377, 429 P.2d 889].) We think she has, and that the weighing procedures of a trial should be employed to dispose of the fact issues.

The summary judgment is reversed.

Conley, P. J., and Gargano, J., concurred.