[Civ. No. 12446. Fourth Dist., Div. Two. Jan. 29, 1974.]

U. S. FINANCIAL et al., Plaintiffs and Appellants, v.
JAMES SULLIVAN et al., Defendants and Respondents.

■

## Counsel

Higgs, Fletcher & Mack, Vincent E. Whelan, Donald H. Glaser, Taylor & Smith, Edward F. Taylor, Shenas, Robbins, Shenas & Price, Peter Shenas, and Robert F. Adelizzi for Plaintiffs and Appellants.

King & Mussell, Stanley Mussell, Dunne, Shallcross & Kane and Robert E. Dunne for Defendants and Respondents.

## Opinion

**KAUFMAN, J.**—Plaintiff and appellant Home Federal Savings and Loan Association of San Diego (Home Federal) appeals from a judgment of dismissal following the sustaining of demurrers without leave to amend to causes of action 63 through 78 of the third amended complaint.

### Facts[1]

From August 20, 1963, to May 7, 1964, respondent James Sullivan[2] was the owner, developer and subdivider of a residential tract of land consisting of approximately 40 lots. Although it is not expressly alleged,

---

[1]For purposes of this appeal, all properly pleaded allegations of the third amended complaint and inferences therefrom are deemed admitted. (*Bank of America* v. *Security Pacific Nat. Bank,* 23 Cal.App.3d 638, 641-642 [100 Cal.Rptr. 438]; *Harvey* v. *City of Holtville,* 271 Cal.App.2d 816, 819 [76 Cal.Rptr. 795].)

[2]Although James Sullivan is a party respondent to this appeal, he has filed no brief.

we infer that respondent Pacific Southwest Investment Inc. (Pacific Southwest) succeeded to the interest of James Sullivan on or about May 7, 1964, and thereafter was the owner, developer and subdivider of said tract. Respondent Hugh M. Gallaher is a civil engineer and a purported expert in the field of soil testing. Respondent Zampese and DeBenedet is a partnership engaged, apparently as a contractor, in excavation and grading. It is alleged that Sullivan, Pacific Southwest, Gallaher and Zampese and DeBenedet did the grading, engineering, soil testing, construction, and other work involved in the development of the tract.

On May 7, 1964, Home Federal loaned specified amounts of money on 39 lots in the tract to Pacific Southwest for the purpose of constructing single-family dwellings on completed lots within the tract. In exchange, Pacific Southwest executed and delivered to Home Federal 39 promissory notes and a deed of trust on each of the 39 lots, naming Home Federal as the beneficiary therein. At that time, each lot was of sufficient value to provide adequate security for the loan made thereon.

On October 28, 1964, U. S. Financial, the plaintiff in causes of action 1 through 53 and 55 in the third amended complaint, loaned $30,000 to Pacific Southwest for the purpose of completing single-family dwellings on 38 lots in the tract. To secure repayment of this loan, U. S. Financial received from Pacific Southwest a promissory note secured by a second deed of trust on the 38 lots. U. S. Financial subsequently advanced an additional $24,282.27 to Pacific Southwest which amount was also secured by the second deed of trust.

Pacific Southwest defaulted on the U. S. Financial note and second deed of trust. U. S. Financial caused a power-of-sale foreclosure and bought the 38 lots at the sale. It received a trustee's deed on April 9, 1965.

In November 1965, Home Federal reconveyed its previously existing deeds of trust on 25 lots and, in exchange, received from U. S. Financial new promissory notes and deeds of trust on these lots.

In the development of the tract, the lots had been cut and filled and houses erected thereon. On or about November 1, 1965, a differential settlement occurred in the filled earth, causing foundation failure, cracks and other damage to the houses constructed on the lots.[3] The differential settlement, however, was not visible, apparent or known to either U. S. Financial or Home Federal until on or about December 31, 1966. After the damage was discovered, U. S. Financial apparently caused some corrective work to be done, and the improved lots were sold by U. S. Finan-

---

[3]Causes of action 63 through 78 concern damage incurred from the differential settlement on 8 of the 25 lots.

cial to individual purchasers. As part of the transaction, the individual purchasers executed and delivered to Home Federal new promissory notes secured by first deeds of trust. Home Federal executed and delivered a full reconveyance of the previously existing notes and deeds of trust and forgave substantial sums to which it was entitled thereunder. Prior to the sale to individual purchasers, U. S. Financial was in default of payment on Home Federal's notes and deeds of trust. Although Home Federal could have instituted foreclosure proceedings and thereafter could have probably procured deficiency judgments against U. S. Financial (see *Paramount Sav. & Loan Assn.* v. *Barber,* 263 Cal.App.2d 166 [69 Cal.Rptr. 390]; Cal. Real Estate Secured Transactions (Cont.Ed.Bar) p. 301), it did not do so.[4]

.  On October 27, 1967, Home Federal filed the instant action seeking money damages against James Sullivan, Pacific Southwest, Hugh M. Gallaher and Zampese and DeBenedet for an impairment of its security interest in the several subdivision lots. Causes of action 63 through 70 allege that defendants' negligent acts[5] were the direct and proximate cause of the differential settlement in filled earth which damaged the lots and improvements thereon and rendered them insufficient to secure the promissory notes of Home Federal. Causes of action 71 through 78 allege that defendants defectively manufactured the lots and are liable under the theory of strict liability. Respondents James Sullivan, Hugh Gallaher and Zampese and DeBenedet separately demurred to causes of action 63 through 78. The court sustained the demurrers without leave to amend "on the grounds that they fail to state sufficient facts to state a cause of action since the facts alleged do not show why said Plaintiff did not foreclose and obtain a deficiency judgment from U. S. Financial."

---

[4]Home Federal alleges that it chose not to seek foreclosure because as to each deed of trust: 1. The value of the security was less than the balance due on the note; 2. A deficiency judgment entails a one year redemption period during which Home Federal would not have been able to sell the house. The expense of holding and maintaining said lot for said one year would have exceeded the sums derived by said deficiency judgment; 3. Home Federal is required by Federal Regulations to carry all loans which are not current on its books as a "scheduled item"; by said Federal Regulations, an increase in "scheduled items" decreases its lendable funds.

[5]It is alleged that said defendants were negligent in the following respects:

(a) Cutting of the natural soil was improperly conceived, designed, engineered, supervised, performed, tested and graded;

(b) The placement of fill upon the property was improperly conceived, designed, engineered, supervised, performed, tested, graded, installed, compacted and constructed;

(c) The natural soil was improperly tested;

(d) The homes were improperly placed upon said lots; and

(e) The homes were negligently constructed.

The time at which the negligent acts are alleged to have occurred in relation to the time the several series of trust deeds were created is unclear. That fact appears to us to be crucial, however, only to a possible defense of contributory negligence.

## Contentions, Discussion and Disposition

### Appealability of the Judgment

We are confronted at the outset by the question whether the judgment appealed from is appealable. The complaint names several parties as plaintiffs. Causes of action numbered 57 through 78 are those in which plaintiff Home Federal seeks relief. ■ These causes of action all name as parties defendant the same persons. However, causes of action 57 through 62 involve lots 4, 14 and 35; whereas, causes of action 63 through 78 involve lots 5, 9, 12, 17, 25, 26, 31 and 32. When the court sustained respondents' general demurrers to causes of action 63 through 78 without leave to amend, it also sustained with leave to amend special demurrers grounded on uncertainty to causes of action 57 through 62, which causes are still pending. Inasmuch as causes of action 57 through 62 are still pending and name as parties defendant the same parties as causes of action 63 through 78, the question arises whether the judgment dismissing causes of action 63 through 78 violates the one-final-judgment rule. (See 6 Witkin, Cal. Procedure (2d ed. 1971) p. 4050, et seq.)

For all practical purposes, the judgment of dismissal constitutes a final determination that plaintiff is entitled to no relief with respect to lots 5, 9, 12, 17, 25, 26, 31 and 32. The counts still pending constitute separate claims for relief with respect to other lots, lots 4, 14 and 35. Were we free to do so, we should be inclined to adopt the rule that where a judgment of dismissal of less than all the counts in a complaint finally determines claims for relief which are separate and distinct from the claims for relief remaining to be tried, the judgment is appealable. (Cf. Fed. Rules Civ. Proc., rule 54(b); *Reeves* v. *Beardall,* 316 U.S. 283 [86 L.Ed. 1478, 62 S.Ct. 1085]; *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427, 434-436 [100 L.Ed 1297, 1305-1306, 76 S.Ct. 895]; *Cold Metal Process Co.* v. *United Eng. & F. Co.,* 351 U.S. 445, 452 [100 L.Ed 1311, 1318, 76 S.Ct. 904]; see 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4062-4063.) But the rule is settled in California to the contrary. *(Bank of America* v. *Superior Court,* 20 Cal.2d 697, 701-702 [128 P.2d 357]; *de Vally* v. *Kendall de Vally O. Co., Ltd.,* 220 Cal. 742, 744, 745-746 [32 P.2d 638]; *Crofoot* v. *Crofoot,* 132 Cal.App.2d 794, 797-799 [283 P.2d 283]; *Wilson* v. *Wilson,* 96 Cal.App.2d 589, 595-596 [216 P.2d 104]; see 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4060-4062.) The entry of the judgment of dismissal was therefore improvident. The ruling of the court should have been embodied only in a minute order pending final judgment in the action.

Still, the propriety of the trial court's ruling has been briefed by both parties and trial of the case has already been delayed pending this appeal.

Under the circumstances, it is unthinkable to permit this complex case to go to trial on only some of the counts because of an erroneous ruling by the trial court on defendants' demurrers when to do so would almost certainly result in an eventual appeal and reversal of the judgment because of this error. (Cf. *Vasquez* v. *Superior Court,* 4 Cal.3d 800, 806-807 [94 Cal. Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) At oral argument, the parties stipulated that we might treat the record as a petition for a writ of mandate. Although we would not accept the stipulation under ordinary circumstances, we think the circumstances of the case at bench compelling enough to indicate the propriety of a petition for writ of mandate in the first instance (cf. *Vasquez* v. *Superior Court, supra*), and we accept the stipulation of the parties and treat the appeal as a petition for a writ of mandate.[6] (Cf. *Clovis Ready Mix Co.* v. *Aetna Freight Lines,* 25 Cal.App.3d 276, 281-282 [101 Cal.Rptr. 820].)

*Negligence*

We are uncertain whether respondents contest the general proposition that the beneficiary of a deed of trust may maintain an action against a third party who has negligently impaired the beneficiary's security. Reference is made in respondents' brief to the so-called "New York rule" that a mortgagee may maintain a cause of action against a third party for impairment of security only if the third party's tortious conduct was intentional. (See Denton, *Right of a Mortgagee to Recover Damages from a Third Party for Injury to Mortgaged Property in Ohio,* 3 Ohio St.L.J. 161, 165-166; Annot., 37 A.L.R. 1120, 1121-1122.) ▋ If this constitutes a contention that a beneficiary of the deed of trust may recover from a third party for impairment of security only in the case of an intentional tort, we reject it.

In the first place, several California cases have strongly implied, if not held, that a mortgagee or beneficiary of a deed of trust has a cause of action for impairment of security against a negligent third party tortfeasor. (See *American Sav. & Loan Assn.* v. *Leeds,* 68 Cal.2d 611, 614 fn. 2, 616 [68 Cal.Rptr. 453, 440 P.2d 933]; cf. *Connor* v. *Great Western Sav. & Loan Assn.,* 69 Cal.2d 850, 856, 870 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]; *Los Angeles T. & S. Bk.* v. *Bortenstein,* 47 Cal.App.

---

[6]We realize that the San Bernardino Superior Court, which would properly be a party respondent to a mandate proceeding, is not before us. Realistically, however, the superior court would be only a nominal party respondent and, undoubtedly, would not appear. We also recognize that, since we are treating the appeal as a petition for a writ of mandate, defendants are properly designated real parties in interest. Nevertheless, we shall continue throughout this opinion to refer to them as respondents.

421, 424 [190 P. 850]; *Snelson* v. *Ondulando Highlands Corp.,* 5 Cal. App.3d 243, 257-258 [84 Cal.Rptr. 800, 85 Cal.Rptr. 806].)

Secondly, general principles of California tort law indicate the same result. ■ It is settled law in this jurisdiction that developers, designers and contractors are liable to purchasers of real property for damages resulting from their negligent acts. (*Sabella* v. *Wisler,* 59 Cal.2d 21, 28 [27 Cal.Rptr. 689, 377 P.2d 889]; *Gagne* v. *Bertran,* 43 Cal.2d 481, 489-490 [275 P.2d 15]; *Stuart* v. *Crestview Mut. Water Co.,* 34 Cal.App.3d 802, 809 [110 Cal.Rptr. 543]; *Sweeney* v. *Stone,* 265 Cal.App.2d 693, 696 [71 Cal.Rptr. 497]; cf. *Stewart* v. *Cox,* 55 Cal.2d 857, 862-863 [13 Cal. Rptr. 521, 362 P.2d 345]; *Biakanja* v. *Irving,* 49 Cal.2d 647, et seq. [320 P.2d 16, 65 A.L.R.2d 1358].) We see nothing in principle or public policy that militates against similar liability to a mortgagee or beneficiary of a deed of trust when negligent conduct has resulted in the impairment of the mortgagee's or beneficiary's security interest. (See Denton, *supra,* 3 Ohio St.L.J. 161, 165-166.) Civil Code section 1714 provides: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the. management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ." "[I]n the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Rowland* v. *Christian,* 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) ■ Any ". . . departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 112-113; see also *Sabella* v. *Wisler, supra,* 59 Cal.2d at p. 28; *Biakanja* v. *Irving, supra,* 49 Cal.2d at p. 650.)

It is common knowledge that the development of residential subdivisions is accomplished financially by means of loans secured by deeds of trust on the real property involved. Therefore, it was not only reasonably foreseeable that the alleged negligence of respondents would result in impairment of plaintiff's security, such a result was substantially certain to occur.

It is certain that plaintiff has suffered injury; at least, plaintiff cannot recover without proving that it suffered injury. The connection between respondents' conduct and the injury suffered is direct. The moral blame attached to respondents' conduct is considerable. Respondents are undertaking to provide housing for families to whom the purchase of a home may be assumed to be a major transaction. Negligence on their part in preparing the lots or in constructing the houses would almost certainly result in severe financial injury to such purchasers and, possibly, physical injury. Imposition of liability upon respondents for their negligent conduct might have a desirable prophylactic effect of preventing future negligent conduct. The burden of imposing upon respondents a duty to exercise care with resulting liability for breach is not an unduly heavy burden inasmuch as respondents are already under a duty to exercise reasonable care with respect to purchasers. Moreover, insurance for such liability is readily available to respondents.

We hold, therefore, that respondents may be held liable to plaintiff Home Federal for negligent impairment of its security interests.

Respondents contend, however, that a mortgagee or beneficiary cannot recover from a third party tortfeasor without first foreclosing the security and seeking satisfaction from the mortgagor or trustor. This contention is not supported by compelling authority, nor logic, nor sound public policy.

Respondents cite *Robinson* v. *Russell,* 24 Cal. 467 as the leading California case supporting its position. Respondents' reliance upon the cited case is misplaced. In *Robinson,* a mortgagee sought an injunction to restrain third parties from, inter alia, removing growing trees and vines from the land subject to the mortgage. The California Supreme Court affirmed the judgment denying the injunction on the basis that no irreparable harm to the land was threatened. (24 Cal. at p. 473.) The court noted that full and adequate damages might be recovered in an action for trespass against the defendants and that "[i]t is not stated that the *defendants* [third parties] are insolvent or unable to respond in damages for the alleged or threatened injury." (24 Cal. at p. 473, italics supplied.) Thus the holding of the *Robinson* case was the familiar one that an injunction may not be had in the absence of a showing that an action for damages would be an inadequate remedy. Indeed, the *Robinson* court stated: "There can be no doubt but that an action can be maintained by the mortgagee for injuries of the character set forth in the complaint in this case, when it appears that by the acts complained of the mortgage security is impaired." (24 Cal. at p. 473.)

Thus, the *Robinson* case does not support respondents' contention and, indeed, by its dictum quoted above, tends to support that of Home Federal. The holdings in *Buckout* v. *Swift,* 27 Cal. 433 and *Miller* v. *Waddingham,* 91 Cal. 377 [27 P. 750] are substantially the same as that in *Robinson.*

Respondents also appear to have placed some reliance on *Lavenson* v. *Standard Soap Co.,* 80 Cal., 245 [22 P. 184]. In that case, a mortgagee sought damages against the mortgagor and a third party for impairment of the mortgaged security. The court noted that before the mortgagee could resort to other property of the *mortgagor,* he must exhaust the mortgaged security, citing Code of Civil Procedure section 726[7] and cases based thereon. ■ Code of Civil Procedure section 726, however, applies only to situations in which the action is against a mortgagor or trustor or his successor in interest. (See 3 Witkin, Summary of Cal. Law (8th ed.) pp. 1560, 1567.) Where the beneficiary seeks to recover damages from the trustor, there is reason to require the beneficiary to first seek satisfaction from the property subject to the deed of trust. The security is the primary fund for the discharge of the indebtedness, and the requirement that the security first be exhausted protects the debtor and prevents a multiplicity of actions. (Code Civ. Proc., § 726; *Haas* v. *Palace Hotel Co. of S. F.,* 101 Cal.App.2d 108, 121 [224 P.2d 783].) Where the defendant is a third party tortfeasor, however, the reason for the rule disappears. The action is not for the recovery of the debt secured by the mortgage but for damages for the tortious conduct of the third party tortfeasor resulting in impairment of the security. In legal theory, the monetary recovery against the third party tortfeasor is treated as the land itself. It takes the place of the reduced value of the land. (*American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at p. 614, fn. 2; *Los Angeles T. & S. Bk.* v. *Bortenstein, supra,* 47 Cal.App. at p. 424.)

Respondents also cite *American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d 611, *Easton* v. *Ash,* 18 Cal.2d 530 [116 P.2d 433], *Jensen* v. *Shadburne,* 145 Cal.App.2d 624 [302 P.2d 824], and *Los Angeles T. & S. Bk.* v. *Bortenstein, supra,* 47 Cal.App. 421. We have examined these cases and find therein no support for respondent's position. On the contrary, there is language in most of these cases supporting the general proposition that a beneficiary may maintain an action against a third party tortfeasor for conduct which has impaired his security. (E.g., *American Sav. & Loan*

---

[7]Code of Civil Procedure section 726 provides in pertinent part: "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real property, which action must be in accordance with the provisions of this chapter [pertaining to foreclosure]. . . ."

*Assn.* v. *Leeds, supra,* 68 Cal.2d at pp. 614 fn. 2, 616; *Jensen* v. *Shadburne, supra,* 145 Cal.App.2d at p. 626; *Los Angeles T. & S. Bk.* v. *Bortenstein, supra,* 47 Cal.App. at pp. 424-425.)

Thus, the cases relied on by respondents do not support their position and, indeed, while not conclusive, tend to support the position of Home Federal. (Also cf. *Yellen* v. *Fidelity & Casualty Co. of N. Y.,* 115 Cal.App. 434, 438-440 [1 P.2d 1019]; and see generally, Denton, *supra,* 3 Ohio St.L.J. 161.)

In the absence of controlling case law, the solution must be sought in logic and public policy. ▇▇ The rule espoused by respondents that a mortgagee or beneficiary must first foreclose and seek satisfaction from the mortgagor or trustor does not appeal to reason. In the first place, although in the case at bench the deeds of trust were in default, that circumstance may be wholly fortuitous. A situation may be envisioned in which the property has been physically damaged by the negligent conduct of third parties but the mortgage or trust deed is not in default. Under such circumstances, the mortgagee or trustee could not institute foreclosure proceedings. Secondly, the rule argued for by respondents would impose needless litigation upon innocent trustors.

Moreover, the rule urged is not consistent with sound policy because it would inevitably result in an unwarranted circuity and multiplicity of actions. If the trust deed beneficiary or mortgagee is required to foreclose against an innocent trustor or mortgagor, the latter, in turn, would be led to institute an action against the negligent wrongdoer. Thus, two actions or proceedings would be required instead of one. The multiplicity of litigation would ordinarily be aggravated when many lots in a subdivision are involved. Although in the present case there is but one trustor, the usual situation involving a subdivision will involve not one trustor, but many. Under the rule espoused by respondents, the beneficiary would be required to initiate action against each trustor, and each trustor would, in turn, be required to initiate action against the negligent wrongdoer. Such a rule is not consistent either with justice or with the efficient administration of justice.

The only reason advanced by respondents in support of their position is that if the beneficiary or mortgagee is not first required to foreclose against the trustor or mortgagor, the negligent wrongdoer may be held liable twice or at least suffer overlapping damages in separate actions by the beneficiary or mortgagee and the trustor or mortgagor. As respondents point out, U. S. Financial occupies the position of trustor and is a plaintiff in this very law-

suit seeking damages from respondents with respect to the same acts of negligence and the same parcels of property for which Home Federal seeks damages.

The argument is unpersuasive. ■ "When a third person tortiously damages the property, both the mortgagor and mortgagee may sue the third party tortfeasor." (*American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at p. 614, fn. 2.) Each is entitled to the damages suffered by him. (Cf. *Connor* v. *Great Western Sav. & Loan Assn., supra,* 69 Cal.2d at pp. 856, 870; *American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at p. 616; *Los Angeles T. & S. Bk.* v. *Bortenstein, supra,* 47 Cal.App. at pp. 424-425; see Osborne, Mortgages (2d ed. 1970) pp. 218-219.) Thus, in the case at bench, U. S. Financial properly seeks recovery of its out-of-pocket losses incurred in performing repairs and corrective work on the property, and Home Federal properly seeks recovery only for the impairment of its security which may be shown in the case at bench by comparing the value of the property before injury and after injury as repaired and corrected by U. S. Financial.

Indeed, if respondents are seriously concerned about the possibility of double liability or overlapping damages, we see no reason they cannot protect themselves by moving to have U. S. Financial and Home Federal joined as necessary parties, each in the respective causes of action of the other. (See Code Civ. Proc., § 389, subd. (a); cf. *Snelson* v. *Ondulando Highlands Corp., supra,* 5 Cal.App.3d at pp. 254-255.)

We conclude that the trial court erred in sustaining without leave to amend respondents' general demurrers to causes of action 63 through 70 of the third amended complaint.

*Strict Liability in Tort*

■ It appears to be settled in California that the mass producer-seller of homes or residential lots who has no reasonable expectation that purchasers will make a thorough inspection for defects is strictly liable in tort to a purchaser for physical damage resulting from a defect in the design or construction of such homes or lots. (*Kriegler* v. *Eichler Homes, Inc.,* 269 Cal.App.2d 224 [74 Cal.Rptr. 749]; *Avner* v. *Longridge Estates,* 272 Cal. App.2d 607 [77 Cal.Rptr. 633].) Just who is such a mass producer-seller—whether that designation includes a contractor who is not a seller or an engineer or designer who is not a seller—appears not to have been definitively decided.

■ Even if it be assumed, however, that the developer, contractor

and engineer are all strictly liable in tort to a purchaser or his successors in interest for the defective manufacture of a home or residential lot,[8] the question remains whether such liability extends to a plaintiff such as Home Federal, the lender whose money has made possible the marketing of the defective home or lot. We hold it does not.

The doctrine of manufacturers' and suppliers' strict liability in tort was developed primarily to protect individual consumers, users, and, to some extent, bystanders who are in no position to protect themselves from defective products. (See *Escola* v. *Coca Cola Bottling Co.,* 24 Cal. 2d 453, 462 [150 P.2d 436] [concurring opinion by Traynor, J.]; *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 262-263 [37 Cal.Rptr. 896, 391 P.2d 168]; *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578, 586-587 [75 Cal.Rptr. 652, 451 P.2d 84, 33 A.L.R.3d 406]; *Kasel* v. *Remington Arms Co.,* 24 Cal.App.3d 711, 725 [101 Cal.Rptr. 314]; *Avner* v. *Longridge Estates, supra,* 272 Cal.App.2d at pp. 610-611; *Kriegler* v. *Eichler Homes, Inc., supra,* 269 Cal.App.2d at p. 228; 2 Harper & James, The Law of Torts (1956) §§ 28.15-28.16, pp. 1569-1574; Prosser, *The Fall of the Citadel* (1966) 50 Minn.L.Rev. 791, 799-800; Prosser, *Strict Liability to the Consumer in California* (1966) 18 Hastings L.J. 9, 19-20, 31-32; Note, *Strict Products Liability and the Bystander,* 64 Colum.L.Rev. 916, 935.)

A lender is not in such a vulnerable position. Without its money, the mass production of homes could not proceed. When it is called upon to lend its money, a lender is in a position to require of the developer not only plans and specifications but engineering reports of all sorts, including a soil test report. Thus, the historical reason for imposing strict liability is absent when sought by a lender whose resources are loaned to facilitate the mass construction of homes.

Moreover, in California at least, the purpose of imposing strict liability in tort is said to be to require the manufacturer of a product to absorb the cost of injuries resulting from a defect in the product so that the risk of injury can be insured by the manufacturer and distributed among the public

---

[8]The assumption is arguable as to a contractor. (See Lascher, *Strict Liability in Tort for Defective Products: The Road to and Past Vandermark* (1965) 38 So.Cal.L.Rev. 30, 57.) The assumption is tenuous with regard to the engineer or designer. (See *Stuart* v. *Crestview Mut. Water Co., supra,* 34 Cal.App.3d 802, 811-812; *Allied Properties* v. *John A. Blume & Associates,* 25 Cal.App.3d 848, 855-856 [102 Cal.Rptr. 259]; *Gagne* v. *Bertran, supra,* 43 Cal.2d 481; but see *Cronin* v. *J.B.E. Olson Corp.,* 8 Cal.3d 121, 134 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Pike* v. *Frank G. Hough Co.,* 2 Cal.3d 465, 475 [85 Cal.Rptr. 629, 467 P.2d 229].)

as a cost of doing business. (*Seely* v. *White Motor Co.,* 63 Cal.2d 9, 18-19 [56 Cal.Rptr. 17, 403 P.2d 145]; *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 63; *Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d at p. 262; *Elmore* v. *American Motors Corp., supra,* 70 Cal.2d at p. 585; *Kasel* v. *Remington Arms Co., supra,* 24 Cal.App.3d at p. 733; Prosser, *supra,* 18 Hastings L.J. at pp. 19-20, 31-32.) Unlike the consumer, user, or bystander, the lender is itself a link in the marketing chain of mass-produced homes and residential lots and is itself in a position to spread the risks of harm resulting from a defective lot or home.

We conclude that the trial court correctly sustained the demurrers to causes of action 71 through 78.

Let a peremptory writ of mandate issue to the San Bernardino Superior Court commanding it to vacate its judgment of dismissal of causes of action 63 through 78 and to enter its minute order overruling respondents' general demurrers to causes of action 63 through 70 and sustaining said general demurrers to causes of action 71 through 78 and to proceed further in a manner consistent with this opinion.

Kerrigan, Acting P. J., and Tamura, J., concurred.