[Civ. No. 29548. Fourth Dist., Div. Two. Aug. 28, 1984.]

IFS INDUSTRIES, INC., Plaintiff and Respondent, v.
DALE J. STEPHENS et al., Defendants and Appellants.

COUNSEL

Babcock & Cappelli, and Craig G. Riemer for Defendants and Appellants.

Sullivan, Markham & Lewin, Sullivan, Markham, Lewin & Disner, Sullivan, McWilliams, Markham, Lewin, Christopher & Disner, Jeffery D. Lewin, Maureen F. Hallahan, Rebecca S. Ryan and Donald G. Rez for Plaintiff and Respondent.

OPINION

KAUFMAN, J.—Defendants Dale J. Stephens, William M. Ray and Triangle Associates (Triangle), a partnership, purport to appeal from an order of the Riverside Superior Court removing them as the trustees of certain preneed funeral trusts, appointing a successor trustee, and ordering defendants to turn over the assets of the trusts to the successor trustee and to provide the successor trustee a complete and accurate accounting of the trusts.[1]

We have determined that the order purportedly appealed from is not an appealable order. However, we have also determined that this is an appropriate case in which to treat the purported appeal as an application for a writ of mandate and that a peremptory writ of mandate should issue requiring the superior court to vacate its order.

*Statutory Scheme*

To facilitate an understanding of the facts and issues an introduction to the salient features of the statutory scheme regulating preneed funeral trusts and the policies of the Board of Funeral Directors and Embalmers (Board), the agency charged with their regulation, is in order. We start with a quo-

---

[1]At one point the appeal was dismissed as to defendant Ray because of his failure to file a brief. However, subsequently the order of dismissal was vacated and Ray was granted relief from default and permitted to adopt the brief of appellants Stephens and Triangle.

tation from a declaration in the record from the executive secretary of the Board:

"The Board of Funeral Directors and Embalmers licenses the funeral industry in California and is charged with regulation and enforcement responsibilities relative to pre-need funeral arrangements.

"Section 7735 et seq. of the Business and Professions Code prohibits funeral directors from accepting money in advance of need unless the contract requires that all money paid directly or indirectly shall be held in trust for the purpose intended. Only a funeral director, licensed by [the] Board, is authorized to provide funeral merchandise and service. (See Business and Professions Code Section 7615.)

"If a consumer enters into a pre-need agreement with a funeral director, and delivers money to the funeral director, his agent or employee, the funeral director is required to place the money into trust within 30 days of receipt. Section 7736 of the Business and Professions Code provides that a trustee may be either a bank or three persons, one of whom may be an employee of the funeral director. In most of the three-party trusts which are reported annually to [the] Board, the funeral director or one of his or her employees serve as trustee. Also, the funeral director designates the other two trustees. As a matter of regulatory practice, the Board has always emphasized the responsibility of the funeral director to designate trustees and to replace trustees if one or more of the original trustees resigns, becomes incompetent, or acts improperly. Since the Board's jurisdiction only extends to its own licensees, the Board has held the funeral director responsible for any improprieties committed by trustees which were appointed by the funeral director.

"As a practical matter, consumers enter into an agreement with a funeral director to provide certain merchandise and services at the time of their death. A single purpose, long-term trust instrument is established. It is not uncommon for these types of trusts to endure for 20 years or longer. During that time, the consumer at all times communicates with the funeral director regarding that trust. Since the trustees, designated by the funeral director, are usually unknown to the consumer, the funeral director is generally held to be responsible for the proper administration of the trust money. Likewise, the Board has always held the funeral director responsible for the acts of the trustees as they are chosen by the funeral director. Therefore, the Board considers it entirely proper for the funeral director to act to have trustees removed if there is any indication that the trustee may not be acting in the best interest of the trustor."

Business and Professions Code section 7735[2] provided in relevant part: "The income from the corpus may be utilized to pay for the following: The expense of administering the trust, a trustee's fee of not to exceed twenty-five dollars ($25.00), any sales expense incurred, and to establish a reserve of not to exceed 10 percent of the corpus as a revocation fee in the event of cancellation on the part of the beneficiary. [¶] None of the trust corpus or trustees' fee shall be used for payment of any commission nor shall any of the trust corpus be used for other expenses of trust administration."[3]

Section 7737 provides in relevant part that a trust agreement is to be executed by the funeral director, the trustor and the trustee, which, with exceptions not here pertinent, shall include inter alia a provision that at any time before the funeral director has furnished the merchandise and services specified in the contract, the trustor or the beneficiary "may in writing demand and receive the return of the corpus of the trust." Section 7737 also provides that upon filing of a certified copy of the death certificate together with proof the funeral director has furnished the merchandise and services provided for in the preneed funeral contract, the corpus of the trust shall be delivered to the funeral director.

### Facts

Defendants Stephens and Ray are individuals who are principals in a general partnership known as Triangle Associates. On or about August 30, 1971, defendants entered into two written agreements with Berry Bell Mortuary, entitled "Trustee Agreement" and "Management Agreement." On or about January 28, 1972, Palm Springs Mortuary entered into a similar set of agreements with defendants. The agreements signed by the two mortuaries were substantially identical.

The trustee agreement provided in material part that the purpose of the documents was to comply with sections 7735 et seq. regarding the holding in trust of prepaid funeral funds; that the funeral director would act as a trustee along with defendants Stephens and Ray; that defendants would perform recordkeeping, prepare necessary reports, furnish financial statements, act as advisors to the management of the trustee and provide office space

---

[2]All further statutory references will be to the Business and Professions Code unless otherwise specified.

[3]Section 7735 was amended in 1976. As amended, section 7735 provides: "The income from the corpus may be utilized to pay for a reasonable annual fee for administering the trust, including a trustee fee, to be determined by the board, any sales expense incurred, and to establish a reserve of not to exceed 10 percent of the corpus as a revocation fee in the event of cancellation on the part of the beneficiary. [¶] None of the trust corpus shall be used for payment of any commission nor shall any of the trust corpus be used for other expenses of trust administration." (Stats. 1976, ch. 961, § 4, p. 2196.)

for the trust; that the defendants would receive as compensation for their services 25 percent of the gross income of the trust and that the agreement would remain in effect during the life of the trust.

The management agreement provided in substance that the mortuary hired the defendants to aid and advise it concerning preneed funerals, to sell preneed funerals, and to handle the collection of installment payments and the deposit of those installment payments into a trust. In exchange for these services, the mortuary agreed to pay to the defendants 20 percent (Berry Bell Mortuary) or 25 percent (Palm Springs Mortuary) of the total sales price of the preneed funeral contracts sold. This agreement was also to be irrevocable as long as any sums remained in the trust accounts.

A form declaration of trust was attached as Exhibit A to the management agreement. This form refers to the mortuary as the trustor, but it also expressly states it is intended to comply with the laws of the State of California concerning prepaid funeral services. It also indicates that the source of the trust corpus is the purchaser of those funeral services, rather than the mortuary.

Pursuant to these agreements, numerous preneed funerals were sold and trusts were created from the funds received thereby. All of the trust funds were, in fact, delivered directly to the defendants, rather than the mortuaries.

Plaintiff IFS Industries, Inc., is an Iowa corporation in the business of owning and operating mortuaries. Plaintiff is experienced in preneed funeral arrangements; its preneed funeral trust accounts in California alone exceed $10 million.

After the execution of the contracts between defendants and the two mortuaries, plaintiff purchased Berry Bell Mortuary on August 29, 1972, and changed its name to Eternal Hills Mortuary. On July 7, 1977, plaintiff acquired Palm Springs Mortuary as well. Following these purchases, plaintiff continued to sell preneed funerals and to participate in the establishment of trusts pursuant to these agreements until 1977.

In 1978, an auditor from the staff of the Board of Funeral Directors and Embalmers of the Department of Consumer Affairs of the State of California, audited the preneed funeral trusts involving the two mortuaries. The auditor's report asserted that the preneed trust accounts associated with these two mortuaries were in violation of state law. These allegations by the staff of the Board were denied by defendants. Nevertheless, in December

1979, the Board issued accusations against both of these mortuaries. So far as the record discloses, these accusations have never been disposed of.

Between November 26, 1979, and December 11, 1980, Administrative Law Judge (ALJ) Charles H. Bobby conducted hearings on similar accusations filed by the Board against five other mortuaries which had contractual relationships with defendants; on June 22, 1981, the ALJ issued his decision, which concluded that the Board's accusations should be dismissed.

Notwithstanding the decision of the ALJ, the Board, on March 13, 1982, issued its decision finding the management of the preneed funeral trust accounts of those five mortuaries (which did not include either of the mortuaries owned by IFS) had not been managed by the trustees in accordance with state law, and issued a disciplinary order that the licenses of those five mortuaries would be suspended for 90 days unless new trustees, not associated with Triangle Associates, were appointed.

The five mortuaries which had been the subject of the Board's disciplinary order filed a petition for administrative mandamus in the Los Angeles Superior Court on or about September 20, 1982. Such a writ was issued on September 23, 1982, the effect of which was to stay the operation of the Board's decision pending final judgment in the mandamus proceedings.

Rather than contest the Board's filing of accusations against its mortuaries, IFS demanded that defendants voluntarily withdraw as trustees and transfer the trust funds. Defendants refused to comply, and in September 1982, plaintiff filed the instant action, seeking to remove defendants as trustees, for an accounting, and for damages. At the same time, plaintiff obtained the issuance of an order to show cause requiring defendants to show cause why they should not be removed as trustees, why a new trustee should not be appointed, and why defendants should not be required to render an accounting. Defendants filed an answer denying inter alia the existence of grounds for their removal and filed a cross-complaint for damages. After a hearing on the order to show cause, the trial court ordered defendants removed as trustees, and ordered defendants to render an accounting within 30 days and turn over the assets of the trusts to the successor trustee appointed by the court. Plaintiff's claim for damages and defendants' cross-complaint for damages remain pending in the trial court.

*Contentions, Issues and Discussion*

Defendants contend the order of the trial court removing Stephens and Ray as trustees and ordering defendants to account and turn over the trust corpora to the successor trustee named by the court constituted in effect an

impermissible summary judgment and that in any event there was presented to the trial court no substantial evidence to justify their removal as trustees. They also contend that plaintiff lacks standing to seek their removal as trustees of the preneed funeral trust. In the latter contention defendants are incorrect, but their first two contentions are sound.

## 1. *Standing*

■ Placing great emphasis on the definitions contained in section 7736, defendants contend the mortuaries owned and operated by plaintiff are neither the trustor nor the beneficiary of the trusts and so plaintiff has no standing to seek to remove defendants as trustees. The fact that an employee of plaintiff, the funeral director, is in each case the cotrustee of the trust is not addressed. In any event, however, we conclude the mortuaries owned and operated by plaintiff have a beneficial interest in the trusts sufficient to give plaintiff standing to seek judicial removal of defendants as trustees.

In so concluding, however, we give no weight to the fact that in the form declaration of trust furnished by defendants as an attachment to the management agreement the mortuary is designated as the trustor. Clearly the mortuary is not the trustor either by general trust law or by statutory definition. Section 7736 defines the term "trustor" as "any person who pays the money or deposits the securities used for such preneed arrangements." This accords with general trust law. While the mortuary may and, indeed, is required to turn over to the trustee the moneys received by it under preneed funeral contracts, the funds are actually supplied and paid by the customer, either the person for whom the merchandise and services are to be provided or some person on his or her behalf. Thus, it is plain the mortuary is not the trustor.

However, the mortuary, or in the language of the statute the "funeral director," does have a beneficial interest in the trust. In order to engage in the sale of preneed funeral arrangements the "funeral director" is statutorily required to execute the trust agreement. (§ 7737.) Further, "upon the filing of a certified copy of the death certificate or other satisfactory evidence of the death of the beneficiary, together with satisfactory evidence that the funeral director has furnished the merchandise and services," "the trustee . . . *shall deliver the corpus of the trust to the funeral director.*" (§ 7737, italics added.) Thus the payment of the trust corpus to the funeral director is mandatory upon satisfaction of the enumerated conditions. And, by statute the "funeral director" or mortuary has a beneficial interest in the trust corpus and is not just a creditor as was the case in *Estate of Rider* (1926) 199 Cal. 724 [251 P. 799].

It is true that the word beneficiary is defined in section 7736 as "the person for whom such fund was established"[4] and that from other statutory references to the "beneficiary" the regulating statute clearly intended the person for whom the merchandise and services are to be provided as the primary beneficiary of the trust. That, however, does not preclude the mortuary or "funeral director" from being a beneficiary as to the remainder, and the fact that the trust may be revoked prior to the furnishing of the merchandise and services only renders the interest of the mortuary or "funeral director" contingent. ■ A beneficiary of a trust has standing to seek judicial removal of the trustee and it is not necessary that all the beneficiaries join in the action. (See *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 584 [283 P.2d 704].) It does not matter for purposes of standing that the beneficiary may be entitled only to a remainder or that the interest is contingent. (Bogert on Trusts (rev. 2d ed. 1978) § 522, pp. 33-34.)

## 2. *Nature of the Proceedings and Sufficiency of the Evidence*

As already indicated, at the time it filed its complaint, plaintiff obtained the issuance of an order to show cause why defendants Stephens and Ray should not be removed as trustees and why defendants should not be required to account and turn over the trust corpora to a new trustee to be appointed by the court. It was this order to show cause proceeding that resulted in the order of removal some two months after the complaint was filed. Aside from the background facts set out in the declaration of the executive secretary of the Board, quoted earlier, the only factual showing made in support of the request for the removal of Stephens and Ray consisted of the allegations of the verified complaint; a declaration by Attorney William R. Nevitt, Jr. as to certain statements made by defendant Stephens in response to IFS's demand he and Ray withdraw as trustees; and two declarations by general counsel for plaintiff, James M. Shelger, which in substance simply stated that disciplinary proceedings had been instituted against the mortuaries owned by plaintiff and related the findings of the audit report prepared for the Board as to the preneed funeral trusts of those two mortuaries.

There was a great deal of uncertainty in the trial court as to the nature of the order to show cause proceedings and the effect of any order resulting therefrom. At the outset of the hearing defense counsel pointed out that "it seemed that what [plaintiff] in effect [was] doing was seeking judgment but [it] had not—not selected the proper vehicle—the proper vehicle, my position was the proper vehicle would have been a motion for summary judgment, which probably would have been premature since we didn't have an

---

[4]Section 7736 as worded before amendment in 1976. The section now defines "beneficiary" as "the person for whom the funeral services are arranged." (Stats. 1976, ch. 961, § 5, p. 2197.)

answer on file." The trial court noted, however, that if the trustees were improperly removed, they could still maintain an independent action for damages for breach of contract.

At a later point in the order to show cause hearing, the following colloquy took place:

"THE COURT: . . . This is a pre-trial matter to in effect have the Court affirm what the funeral directors say they want to do; and that is, transfer trustees. I was not reading it as a revocation of trust because I think for that fragment of time between the time that this trust is revoked and Security Pacific, or whoever takes it over and assumes the duties as trustee, then they might be in violation because there might not be a trustee.

"MR. ADLER [defense counsel]: Preliminary relief such as preliminary injunction.

". . . . . . . . . . . . . . . . . . . . . . . .

"MR. ADLER: In the first argument I addressed, and counsel addressed, this question of whether it is a proper question for preliminary relief. Judge Grover indicated that was behind us and to look at this as a judgment issue and that I could respond on that basis. So, I didn't restate any of the argument on that and I thought in effect we had a ruling and we were moving on to the question of whether they were entitled to judgment—

"THE COURT: Treating it as a motion for summary judgment?

"MR. ADLER: I don't think there is any question of that; and if we had the benefit of Judge Grover's memorandum that he indicated he was going to file—

"THE COURT: I am perfectly willing to treat it this way, if all counsel agree, as a motion that is commonly called a partial summary judgment.

"MR. ADLER: That is fine.

"THE COURT: Because I don't think I am ready for a summary judgment. I know I am not because there may be other trustees with compensation they are entitled to. And I don't think we are ready for that until we get an accounting. As far as that goes, there could be all other kinds of issues coming out of the accounting.

"The funeral directors and the state people might be unhappy with the accounting, depending how it comes out. I don't think we are ready for full judgment.

"If we call this a matter determining certain matters to be without issue—now, the trouble with that is that normally that doesn't become effective until you get a final judgment. So, I think *I will have to have it as two things—a temporary order which is enforceable and*, if you wish, *a partial summary judgment, in effect finding that the plaintiffs* [*sic*] *here do have a right to remove and to replace the trustees.* [Italics added.]

"That way you can go up—either side can go up to the Appellate Court, which I don't think you can go up on purely a partial summary judgment. When a judgment comes up, this is going to come up. And I think we should have an order that can be appealed."

We have concluded the trial court was unauthorized to afford the relief it purported to give regardless of how the procedure and resulting order are characterized. The court's reference to the order as "a temporary order which is enforceable" suggests it was attempting to afford plaintiff some nonstatutory provisional remedy. The appropriate provisional remedy, if the proper procedure were invoked and the proper showing made, would have been the appointment of a receiver. (See Code. Civ. Proc., § 564 et seq.) But that is not what was done. The court removed defendants Stephens and Ray as trustees and appointed a successor trustee.

Moreover, it is abundantly clear from the order and the court's statements that the court intended its order of removal to be permanent and final. The only procedure recognized in the courts of California by which such a result could be reached in a pretrial proceeding is a motion for adjudication of issues without substantial controversy—a partial summary judgment. (Code Civ. Proc., § 437c.) That is what defendants' counsel argued the proceedings amounted to, and because that is the only means by which the result could properly be reached, counsel was perforce correct.

Plaintiff insists that the issuance of an order to show cause is a recognized and proper procedure by which to seek removal of a trustee, citing *Estate of Gilmaker* (1962) 57 Cal.2d 627 [21 Cal.Rptr. 585, 371 P.2d 321], *Estate of Schloss* (1961) 56 Cal.2d 248 [14 Cal.Rptr. 643, 363 P.2d 875] and *Goto v. Goto* (1960) 187 Cal.App.2d 603 [10 Cal.Rptr. 20].

In each of the cited cases, unlike this case, the court had continuing jurisdiction, or at least the moving party believed the court had continuing

jurisdiction,[5] over a trust by virtue of earlier proceedings and orders. Thus, the issuance of an order to show cause was a recognized and perhaps a necessary step in invoking the court's continuing jurisdiction. None of the cited cases, however, approved an order removing a trustee without a plenary trial of the issue of cause for removal.

Even in this case there was nothing wrong with the issuance of an order to show cause in and of itself. The court might have bifurcated the issues, tried the issue of removal of the trustees first and, perhaps, entered an interlocutory judgment. The problem here is that the procedure was treated as a pretrial proceeding from the standpoint of the nature and quantum of proof but nevertheless it resulted in a purportedly final adjudication of the principal issue in the case.

■ As defense counsel pointed out in the court below and continues to insist here, the showing made by plaintiff was entirely inadequate to support a partial summary judgment or a ruling that the existence of grounds for removal of defendants as trustees is an issue without substantial controversy. ■ Such a determination may be made only if there is no triable issue and only if the moving parties' declarations are adequate to establish the existence of the fact. (Code Civ. Proc., § 437c; *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 146-147 [60 Cal.Rptr. 377, 429 P.2d 889]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ■ Declarations in support of a motion for summary judgment must show that they are derived from knowledge, set forth admissible evidence and show affirmatively that the declarant is competent to testify as to the matters stated. (*Kiernan* v. *Union Bank* (1976) 55 Cal.App.3d 111, 116 [127 Cal.Rptr. 441].) ■ Moreover, the moving party may not rely on the allegations of its verified complaint. (*Joslin* v. *Marin Mun. Water Dist., supra,* 67 Cal.2d at p. 147.)

■ The showing made by plaintiff of the existence of grounds for the removal of defendants Stephens and Ray as trustees was entirely inadequate. It consisted almost entirely of the hearsay on hearsay statements of James

---

[5]Both *Estate of Gilmaker* and *Estate of Schloss* involved testamentary trusts over which the respective probate courts had continuing jurisdiction generally. In *Estate of Schloss* it was held the superior court in its probate capacity had no jurisdiction to order removal of trustees. (56 Cal.2d at pp. 253-256.) In *Estate of Gilmaker* the holding in *Schloss* was fully recognized. (57 Cal.2d at p. 630.) However, the court held that the petitioner's notice of motion to remove the trustee and its supporting affidavit, which fully set forth the facts relied on for relief, were sufficient to invoke the general jurisdiction of the superior court and that the trustee's appearing and defending on the merits without objection, in effect, waived any defect in the form of the proceedings. (57 Cal.2d at p. 630.) In the case at bench, of course, defendants did raise in the trial court the question of the nature of the proceedings and the nature and quantum of the proof made by plaintiff.

M. Shelger, in conclusionary terms at that, of the unproven findings of the auditor for the Board of Funeral Directors and Embalmers. Patently, Mr. Shelger's declarations were incompetent to establish any misconduct or violation of the law by defendants Stephens or Ray in respect to the trusts.

Plaintiff's contention that its showing in the trial court established without controversy such hostility between the beneficiary and Stephens and Ray as to justify their removal is likewise unmeritorious. In the first place, as previously discussed the primary beneficiary of the trust is the person for whom the merchandise and services are to be provided, not the mortuary or "funeral director." Thus, it is questionable whether any hostility between the beneficiary and Stephens and Ray has been shown.

However, even if the mortuaries are considered the beneficiaries of the trusts for this purpose, no such hostility as is required has been demonstrated, certainly not as a matter of law. ■ The rule is that hostility between the beneficiary and the trustee may be a ground for removal of the trustee *when the hostility threatens to impair the proper administration of the trust.* (*Estate of Gilmaker, supra,* 57 Cal.2d 627, 632; *Copley* v. *Copley* (1981) 126 Cal.App.3d 248, 288 [178 Cal.Rptr. 842].)

■ Here, the only showing of hostility between defendants Stephens and Ray on the one hand and IFS on the other is found in the declaration of attorney William R. Nevitt. Mr. Nevitt stated that in response to IFS's demand that Stephens and Ray withdraw as trustees Stephens stated to him in a telephone conversation that he (Stephens) would be " 'bull-headed' " and that "it would cost IFS 'dearly in court' in publicity" if IFS filed suit against these defendants and that Mr. Stephens further said that "he would see that every newspaper in town carried the story of the lawsuit even if he had to hire a private reporter" and that "if IFS filed suit, it would cost IFS money because Mr. Stephens will pass through attorneys' fees to the trusts."

We first observe that this hostility on the part of Stephens resulted directly from IFS's demand he quit as trustee and turn over the trust assets. It would be a poor rule indeed that would permit a beneficiary to remove a trustee for hostility it itself engendered by demanding the trustee's resignation. Secondly, nothing that was said by defendant Stephens in any way threatens to impair the administration of the trust with the possible exception of the passing through of attorney fees, and whether or not the majority of the trustees would attempt such a thing or be permitted to do so if they tried, is entirely problematical.

Finally, plaintiff contends it has demonstrated a conflict of interest on the part of Stephens and Ray that justifies their removal. Plaintiff asserts in its

brief: "As trustees, Stephens and Ray have enriched themselves at the mortuaries' expense by invading the trust corpus and by paying all of the trust interest to themselves as Triangle Associates in the form of excessive fees and unjustified expenses. These payments deplete funds that would otherwise rightfully pass to [the mortuaries]. No conflict could be more clear. However, this traditional conflict pales compared to the conflict resulting from the actions by the Board. [¶] Stephens' and Ray's unjustified refusal to resign as trustees has subjected [the mortuaries] to disciplinary proceedings and threatens to deprive plaintiffs [*sic*] of their licenses."

With respect to the assertion of conflict of interest on account of defendants' enriching themselves at the mortuaries' expense by invading the trust corpus, etc., suffice it to say that plaintiff presented no competent evidence to the trial court establishing that fact. Clearly, that is not an issue without substantial controversy.

Plaintiff's other assertion does not evidence any conflict of interest on the part of defendants Stephens and Ray. If, in fact, there exists no ground for their removal, they are not required to withdraw as trustees simply because the Board of Funeral Directors and Embalmers has seen fit to file accusations against IFS's mortuaries. That the Board has apparently determined it has no jurisdiction to regulate the trustees of preneed funeral trusts directly may evidence an omission from the regulatory statutes. The fact that the trust agreement between the mortuaries and defendants does not expressly provide a contractual remedy for the mortuaries in circumstances such as these may evidence a failure on the part of the mortuaries to have properly protected their interests at the time the contracts were entered into. However, IFS may not suffer the filing of disciplinary accusations against it, fail to defend and then attempt to solve its problems by the *ipse dixit* of declaring a conflict of interest on the part of the trustees for their refusal to withdraw. IFS's insistence that Stephens and Ray withdraw as trustees because the licenses of its mortuaries are threatened by the unproven charges lodged by the Board reflects a somewhat myopic failure to perceive that its own actions threaten the reputation and business of defendants on the basis of the same unproven charges. Unless and until some ground for the removal of Stephens and Ray as trustees is proved, they are not required voluntarily to remove themselves as trustees and there is no conflict of interest.

We conclude that insofar as the order of the trial court amounted to a partial summary judgment or adjudication of an issue without substantial controversy, it cannot stand.

Plaintiff next contends the order may be upheld as an exercise of the equitable powers of the court. Plaintiff asserts that a court of equity may

fashion an appropriate remedy and may remove a trustee whenever it appears appropriate without awaiting final disposition of all issues in the case. Undoubtedly that is so. But, there was no great need for any unusual inventiveness. ■ On an appropriate showing the court might have replaced Stephens and Ray with a receiver, but the provisional remedy of receivership is utilized sparingly and only upon a compelling showing of need therefor. As previously suggested, the court might have bifurcated the issues, tried the removal issue first and entered an interlocutory judgment supported by competent proof. But of course none of these things was done.

Plaintiff's resort to the equitable powers of the court is actually quite aside the mark. ■ There is but one form of action in the courts of the State of California (Code Civ. Proc., § 307) and the same court tries and determines questions of both law and equity. (*Offer* v. *Superior Court* (1924) 194 Cal. 114, 122 [228 P. 11]; *Collins* v. *O'Laverty* (1902) 136 Cal. 31, 35 [68 P. 327].) True, disputed legal questions may be tried to a jury whereas equitable questions are tried to the court. (See *Southern Pac. Transportation Co.* v. *Superior Court* (1976) 58 Cal.App.3d 433, 436 [129 Cal.Rptr. 912].) ■ However, the point is that in one fashion or another disputed questions must be tried; absent the proper circumstances for a motion for summary judgment or partial summary judgment, the parties to a lawsuit are entitled to a trial, either by the court or by jury.

■ Finally, plaintiff's assertion that the provisions of section 1138 et seq. of the Probate Code authorize the removal of a trustee without a plenary hearing is both incorrect and beside the point. It is beside the point because this proceeding was not brought under the cited statutory provisions which among other things require notice to all beneficiaries of the trust (Prob. Code, § 1138.6, subd. (a)). It is incorrect because although Probate Code section 1138.12 states the legislative intent "that the administration of trusts subject to this article proceed expeditiously and free of judicial intervention" it does not eliminate a party's right to a trial. (See, e.g., *Copley* v. *Copley, supra,* 126 Cal.App.3d 248.) The statement of legislative intent itself continues, "subject to the jurisdiction of the courts of this state as invoked pursuant to this article or otherwise invoked pursuant to law."

3. *Appealability of the Order*

■ As plaintiff correctly points out, a partial summary judgment or an order adjudicating issues to be without substantial controversy, leaving other issues between the parties still to be decided is not appealable. (See *Conway* v. *Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 202-203 [164 Cal.Rptr. 585]; *Trani* v. *R. G. Hohman Enterprises* (1975) 52 Cal.App.3d 314, 315-316 [125 Cal.Rptr. 34].) ■ However, in an appropriate case

an appeal from a nonappealable order may be treated by the appellate court as an application for a writ of mandate. (See *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11-12 [112 Cal.Rptr. 18]; *People* v. *Cimarusti* (1978) 81 Cal.App.3d 314, 320-321 [146 Cal.Rptr. 421], and cases there cited; see also *DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 437 [160 Cal.Rptr. 899].) In the circumstances of this case, our treating the purported appeal as an application for a writ of mandate is appropriate. The nonappealability of the order was not discovered until both parties had fully briefed the merits, and resolution of the question of the validity of the court's order removing defendants Stephens and Ray as trustees so vitally affects the balance of the proceedings, we unquestionably would have issued an alternative writ in the first instance had one been sought, particularly in view of our conclusion the decision of the trial court is legally unauthorized (see *U.S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d 5; see *De-Grandchamp* v. *Texaco, Inc., supra,* 100 Cal.App.3d 424). Accordingly, the matter will be disposed of as an application for writ of mandate.

### Disposition

Let a peremptory writ of mandate issue to the Riverside Superior Court commanding it to vacate its order removing defendants Stephens and Ray as trustees and directing defendants to transfer the trust assets and make an accounting to the successor trustee appointed by the court.

Morris, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied September 14, 1984, and respondent's petition for a hearing by the Supreme Court was denied November 28, 1984.